## STEPHENSON vs. WILSON.

*May 14 — September 21, 1880.*

EJECTMENT: ORDER OF EVIDENCE: ADVERSE POSSESSION: TAX TITLE. *(1) General rule as to recovery in ejectment. (2) Order of evidence. (3) Adverse possession of mining lands. (4) Whose possession interrupts running of limitation. (5) Plaintiff may rely on various titles. (8)* ESTOPPEL *by averment as to possession in former action of ejectment.*

REVERSAL OF JUDGMENT: *(6) On point not ruled upon below.*

1. Plaintiff in ejectment must recover on the strength of his own, and not on the weakness of his adversary's title.

2. The mere fact that the order in which the court required the evidence to be introduced was illogical and tended to confuse the record, is treated in this case as no ground for reversing the judgment; all the evidence bearing upon the essential questions of fact having been introduced.

3. Where one has entered upon land under a claim of title founded upon a written instrument as a conveyance, his occupation of the land by mining operations prosecuted as continuously as the nature of the business and the custom of the country permit, constitutes an adverse possession. R. S., secs. 4211–12.

4. Where one has in good faith entered upon and continued in possession of land under a paper title which he took believing it to be good, the maintenance of such possession during a portion of the three years next after the recording of a tax deed of the land, interrupts the running of the three-year limitation in favor of the tax-title claimant, and defeats the tax title, to the extent of such actual possession and of the constructive possession following upon it.

5. Plaintiff in ejectment may, without legal inconsistency, rely upon his adverse possession under a claim of title founded upon a deed from A., to defeat the title of defendant under a tax deed, and at the same time set up a title by deed from B., paramount to that so derived from A., as the ground of his affirmative right to recover.

6. A judgment will not be reversed upon a point as to which there was no ruling in the court below; it being the duty of the party who wishes the benefit of such point to ask the court below to rule upon it.

[7. Whether, if the grantee in a recorded tax deed is in possession *at the termination of the three years* limited by the statute, the limitation will not run in his favor, is not here determined.]

8. Under a statute which authorized ejectment against persons not in actual possession, but required the complaint to aver that defendant withheld

Stephenson vs. Wilson.

the possession, the record in ejectment, though competent evidence bearing upon the question of possession in a subsequent suit between the same parties or their privies, does not estop the ejectment plaintiff (or one claiming under him) from denying that the defendant in that suit was in possession when the same was brought.   *Wilson v. Henry*, 40 Wis., 594.

APPEAL from the Circuit Court for *Iowa* County.

Ejectment, commenced in 1877, for a quarter section of land.   The question of title to the same land was involved in *Wilson v. Henry and others*, 35 Wis., 241–9, *Stephenson v. Wilson and another*, 37 id., 482–96, and *Wilson v. Henry and others*, 40 id., 594–611, all of which were founded upon alleged trespasses to the land.   The complaint in the present action is in the ordinary form in ejectment.   The answer, after denying all the averments of the complaint except that of defendant's possession, sets up, by way of counterclaim, a tax deed of the land, issued to one Moffett, February 3, 1868 (on a sale made in 1858), and alleged to have been duly recorded on the day of its date; and it avers that Moffett conveyed the land to defendant April 15, 1868; that the land was vacant at the time said deed was recorded, and continued to be unoccupied by or for the original owner for the three years next following; and that the title of such owner was thereby barred.   Plaintiff replied, in substance, that he had had actual peaceable possession of the land, under claim of title founded upon written instruments conveying the same, since 1834; that he had had such actual possession for the three years next after the recording of defendant's tax deed; and that he claimed the benefit of the statute of limitations.

The order and character of the evidence produced by the parties at the trial, and the substance of the instructions as understood by this court, will sufficiently appear from the opinion.

There was a verdict in plaintiff's favor, for the whole of the premises; a new trial was refused; and defendant appealed from a judgment on the verdict.

There was a brief by *Alex. Wilson*, the appellant, and oral argument in his behalf by *Mr. Wilson* and *H. W. Chynoweth*.

For the respondent there were briefs by *Henry & Smith* and *P. A. Orton*, and oral argument by *Mr. Orton* and *J. M. Smith*.

The following opinion was filed on the 23d of June, 1880:

COLE, J. In order for the plaintiff to succeed in the action, he must undoubtedly establish his legal title; in other words, he must recover on the strength of his own title, not on the weakness of his adversary's. The inquiry therefore is, Did he prove a good title to all the land described in the complaint, which consists of four forty-acre tracts? In support of his adverse possession the plaintiff relied on two distinct chains of title: the one derived through the deed from the attorney in fact of Tuttle to Bequette, and Bequette to Collier, and the conveyance by the executors of Collier's will to him, dated May 8, 1857; the other under or through conveyances from Tuttle to Foster, Foster to Nichols, and Nichols to plaintiff, dated July 13, 1872. The validity of the first chain of title was passed upon by this court in *Stephenson v. Wilson*, 37 Wis., 482; and it was held defective as a paper title for reasons stated in the opinion. The other chain of title is a new element in this somewhat protracted litigation between the parties, and seems to have been practically ignored on the trial by the learned circuit judge.

The plaintiff proved his paper title and rested, and the defendant went into his defense based on the tax deed. He was then stopped, and the plaintiff was permitted to go into the question whether he had not acquired title to the premises under the statute in regard to ten years' adverse possession, claiming under the Collier deed. But while this method of trying the issues involved was illogical, and has served to confuse the record, it is not claimed that it affords any ground for

a reversal of the judgment. All the evidence bearing upon the question of possession on either side seems to have been gone into; and under the instructions of the court the jury must have found that the plaintiff had acquired a legal title to the premises by ten years' adverse possession, claiming under the Collier deed. And now the first inquiry is, whether there is sufficient evidence in the record to sustain this verdict. On the part of the defendant it is insisted that it is wholly unsupported by the testimony. He strenuously urges that there is no evidence whatever which warrants a finding that the plaintiff had such actual possession of any of the lands in dispute as would defeat his tax deed. We are constrained to disagree with counsel on this point. According to our view of the case there is sufficient evidence, as detailed in the bill of exceptions, to carry the case to the jury, and from which the jury might draw the conclusion they did in respect to plaintiff's adverse possession.

It is unnecessary to recapitulate the evidence relating to this question. Suffice it to say, after a careful examination, we draw this inference from it. The remark is intended to apply to each forty-acre tract. The doctrine is distinctly laid down in *Wilson v. Henry*, 35 Wis., 241, affirmed in *Stephenson v. Wilson et al.*, *supra*, and reäffirmed in *Wilson v. Henry*, 40 Wis., 594, that occupation of land under a paper title by mining operations, or its possession for the purpose of mining, will constitute as effective adverse possession, as against a tax deed, as its occupation for the cultivation of the soil and raising of crops. Says the chief justice, in the last case: "But, though mining is a less general and important, it is still a frequent and important industry here, entitled to protection as well as agriculture. It is not protected by the statute as agriculture is, but there is no reason why it should be proscribed by the statute, and we have seen that it certainly is not. While the law remains as it is, it is not an open question in this court that mining operations may constitute actual

adverse possession." Page 607. Undeniably, the plaintiff's possession under color of title under this rule of law was adverse, if the evidence showed to the satisfaction of the jury that he was exercising acts of ownership over the land, occupying it for mining purposes, and prosecuting this work as constantly and continuously as the nature of the business and customs of the country would permit or allow.

The defendant claims that there is not a scintilla of evidence that any mining was done on the north half of the quarter section, or, at least, on the northwest forty, after the tax deed was recorded. But this position is hardly borne out by the record; for there is testimony, surely, which conduces to prove, and from which the jury might well have found, that there were mining operations carried on on each forty-acre tract up to the time such mining was stopped by the injunction in 1871. How clear or satisfactory the evidence may be upon that subject, is not a matter for this court to determine. We can only inquire whether it was sufficient to carry the case to the jury on those questions. Upon that point we are quite clear that it was.

Now, in respect to the statute of limitations, the defendant insists that, by reason of the premises being vacant and unoccupied during the three years next after his tax deed was recorded, the statute runs in his favor. But it follows from what has just been said that this position is untenable, the premises not being vacant. The possession and occupancy of the premises by the plaintiff for the purposes of mining, as shown by the evidence, during any part of the three years, breaks the running of the statute in favor of the grantee of the tax deed, or any one claiming under such grantee. This is the settled law of this state. In *Stephenson v. Wilson* it was said, " that any intervention or actual occupancy during the three years by the former owner, or of any person for him, disengages the bar of the statute, and relieves the former owner from the conclusive effect which would otherwise be

given to the tax deed." It is suggested, however, that this rule does not apply here, because the plaintiff did not acquire the legal title until he obtained the deed from Nichols in 1872. But still the plaintiff claimed "the premises *bona fide* under a paper title, which he took believing it to be good. His possession is very distinguishable,.under the statute, from a mere trespass, as in *Gunnison v. Hoehne*, 18 Wis., 268. If Stephenson took actual adverse possession under his paper title, so as to interrupt the three years' possession of the appellant under section 32, ch. 22 of 1859, he would presumably have defeated the appellant's title, to the extent of such actual possession and of the constructive possession following upon it under section 6, ch. 138." RYAN, C. J., in *Wilson v. Henry*, 40 Wis., pp. 608–9. These remarks of the chief justice seem to precisely meet and dispose of the objection that the plaintiff stood in no such relation to the premises as would make his use and occupation of them for mining purposes effectual to destroy the constructive possession under the tax deed.

The learned counsel for the plaintiff say, in their brief, and the statement seems to be supported by the record, as we understand it, that the ruling of the court below was, in effect, that the plaintiff's possession during the three years next after the record of the tax deed would not avail to defeat that deed, unless the plaintiff should prove a valid title to the premises during the time; and as his paper title failed to show such right to the possession, it was necessary that the plaintiff should prove adverse possession in himself, claiming under the deed from Collier's executors of May 8, 1857, for ten years continuously before the record of the tax deed. They insist that this ruling was in conflict with the decisions in *Wilson v. Henry*, as reported in 35 and 40 Wis. There certainly seems to be justice in the criticism; but it is quite obvious that if there was any error in the view which the court took of the case, it operated in favor of the defendant.

And we will add that we quite agree with the same counsel in the position that there was really no legal inconsistency in the plaintiff relying on the Nichols deed to perfect his former defective title, and to establish his right to recover the possession of the land, and at the same time relying on his previous claim of title under the Collier deed, and possession under that claim, in order to turn the statute against and destroy the tax deed. The plaintiff's taking possession in good faith under a paper title, which he supposed to be good, "would operate to begin an actual adverse possession." We know of no principle of law which would prohibit him from buying in an outstanding title to cure defects in his previous title, and at the same time insisting upon his adverse possession.

On the argument there was considerable discussion of the question whether, if the defendant was actually in possession of the premises prior to or at the termination of the three years from the record of the tax deed, the limitation would not run in his favor. The question is an interesting one, but there does not seem to have been any ruling upon it in the court below; therefore we do not feel called upon to decide it. If the defendant had desired this court to pass upon that question, he should have raised it on the record by some proper instruction. The circuit court seems to have utterly overlooked or ignored it in its general charge; but this omission, under the circumstances, cannot be assigned for error. It is quite impossible for the court always to cover every proposition of law in its charge, which may be applicable to some aspect of the case. It is the duty of counsel to present propositions, or call the attention of the court to them, upon which they desire its rulings. Now, in this case, the defendant asked the court to give eight specific instructions, not one of which refers to the question as to what his legal rights would be if the evidence showed he was actually in possession at the termination of the three years next after the record of the tax deed.

As we have said, the defendant asked eight specific requests, which the court refused to give, and the defendant excepted to such refusals. The defendant also excepted to several portions of the charge as given. We do not think any of these exceptions should work a reversal of the judgment. We will not attempt to summarize either the charge or the instructions. Every proposition of law embraced in the instructions which were refused, and which was applicable to the case, was substantially given in the charge. Indeed, some portions of the charge are quite as favorable to the defendant as the law would warrant. In one place the learned circuit judge is reported to have used this language: "By the law in this state, I repeat, gentlemen, under this tax deed the title of the defendant would be good and perfect at the expiration of three years from the time of the recording of this deed, to wit, upon the fourth day of February, 1871; *that is, in case the payments are continuously and unbroken, and the premises unoccupied prior to that time.*" The last clause of this sentence is sheer nonsense, and, we presume, was not uttered by the learned circuit judge, who never fails to express with clearness and precision his views in his charge. Doubtless, there was some mistake on the part of the reporter in taking down the language of the judge. However this may be, the meaningless clause could injure no one. The law of the case was fully submitted to the jury, and it is impossible they could have been misled by these words to the prejudice of the defendant.

On the trial, with other testimony to sustain his defense, the defendant offered. in evidence a judgment roll which showed that the plaintiff, in 1870, commenced an action of ejectment against the defendant to recover these same premises, which action was subsequently dismissed. It is now insisted that this record operated in the nature of an estoppel *in pais*, and that the plaintiff should not be allowed to deny that the defendant was in possession of the premises under his tax

deed when the ejectment suit was brought. The only answer which we deem it necessary to make to this position of counsel will be found in these remarks of the chief justice in *Wilson v. Henry*, when considering this very point: " The record of the ejectment suit of *Stephenson v. Wilson* was apparently competent evidence bearing on the question of possession, *valeat quantum;* but it was certainly not conclusive. The statute authorizes an action of ejectment, in certain cases, against persons not in actual possession, but requires the complaint to aver that the defendant withholds the possession. *Platto v. Jante*, 35 Wis., 629, and cases there cited. The averment of possession in such a case is, therefore, not only formal, but untrue in fact, yet made imperative by an apparent oversight in the statute. *Barclay v. Yeomans*, 27 Wis., 682. And it would be unreasonable and unjust to hold it an estoppel."

This disposes of all the questions in the case we deem material.

*By the Court.*—The judgment of the circuit court is affirmed.

A motion by the appellant for a rehearing was denied September 21, 1880.