PULFORD and others, Respondents, vs. WHICHER and another, Appellants.

*April 8 — April 29, 1890.*

*Equity: Accounting: Landlord and tenant: Tax titles: Possession fraudulently obtained from lessee of owner: Limitation of actions.*

76 555
87 576

76 555
53 LRA 952n

1. The complaint alleges that, while the plaintiffs were all minors, living in another state, and ignorant that there were any unpaid taxes upon their lands in this state, the defendants, knowing those facts, procured a tax deed of said lands and obtained possession thereof by a collusive and fraudulent agreement with the plaintiffs' lessee; that the defendants afterwards procured other tax deeds of the lands; that they had rented the premises to other persons, and during the first two years after taking possession had received in net income from the premises more than enough to repay the amount paid by them for the tax deeds, with interest, and for current taxes. One of the plaintiffs is still a minor. The prayer is for an accounting, for the cancellation of the tax deeds, etc. *Held,* that the action was maintainable in equity, and was not merely an action to redeem lands sold for taxes.

2. When the defendants obtained possession by said fraudulent agreement they became tenants of the plaintiffs and estopped to deny their title; and their possession as tenants being the possession of the plaintiffs, during its continuance the statute of limitations ran against, not in favor of, the tax deeds.

3. The result is the same whether the life estate of the plaintiffs' father in the premises, as tenant by the curtesy, to which the plaintiffs' rights were subject, had or had not been surrendered to them.

APPEAL from the Circuit Court for *Juneau* County.

The substance of the complaint is stated in the opinion. The defendants demurred thereto separately, on the grounds (1) that it does not state facts sufficient to constitute a cause of action; (2) that the action was not commenced within the time limited by law, referring to secs. 1189, 1210*d*, and 1210*e*, R. S.; (3) that several causes of action have been improperly united. This appeal is from an order overruling the demurrers.

For the appellants there were briefs by *H. W. Barney*, attorney, and *Pinney & Sanborn*, of counsel, and oral argument by *A. L. Sanborn*.

For the respondents there were briefs by *Winsor & Winsor*, and oral argument by *F. Winsor*.

COLE, C. J. It is a mistake to say that this is virtually an action to redeem lands sold for taxes. If that were its only object there would be force in the objection that the action is unnecessary, because the statute provides a mode for redeeming land sold for taxes. But the plaintiffs seek an accounting with the defendants as to the rents received and money paid out for taxes, and also a cancellation of the tax deeds and tax certificates mentioned in the complaint. The relief sought is not confined to mere redemption from taxes.

On the allegations of the complaint, is there any ground for the interference of a court of equity? This is really the question raised by the demurrer, aside from the question of the statute of limitations. Now, what are the material facts stated in the complaint? They are that *Orlie Pulford* is a minor, and appears by his guardian *ad litem;* that the plaintiffs are the children and only heirs at law of Harriet R. Pulford, who died at Elroy, intestate, on the 13th day of April, 1876, and was the owner, at the time of her death, of the premises described; that upon the death of

said Harriet R. her lands descended to the plaintiffs, subject to an estate by the curtesy in their father, J. Wood Pulford; that after the death of their mother the plaintiffs occupied the premises in common as a homestead until the year 1878, when they removed with their father to the territory of Dakota. At that time all the plaintiffs were minors. It is alleged that at the time of the mother's death there was on the premises a good dwelling-house, barn, and out-buildings, and that the property was worth $1,000, and that after the plaintiffs removed to Dakota the premises were rented to different tenants at $8 a month; that their father had charge of their property for them until his removal, and that he made arrangements with an agent to collect the rents and pay the taxes on the premises, but they have since been informed that the taxes for certain years were not paid, but the plaintiffs were ignorant of the facts in regard to the matter until long after the defendants had obtained possession of the premises.

It is further stated that after the removal of the plaintiffs to Dakota, and on April 11, 1881, one McEvoy obtained a tax deed, in the usual form, upon the premises, for the taxes of 1874, and that on the same day he executed a quitclaim deed to his co-defendant, *Bunce*, and that both deeds were delivered to the defendant *Whicher*, who placed the deeds upon record; that, though the deed was taken in the name of the defendant *Bunce*, the entire transaction was had with the defendant *Whicher*, and was done for his benefit; that on April 11, 1881, one William Straight occupied the premises under a lease, and that some time in the month of May or June, 1881, the defendant *Whicher*, knowing the plaintiffs were under age, and had their residence in Dakota, and were entirely ignorant that there were any unpaid taxes on the premises or that he had obtained a tax-deed thereupon, for the purpose of oppressing the plaintiffs and obtaining possession of their property without their

knowledge, applied to said tenant, Straight, to turn over the possession of the premises to him (*Whicher*); that, as an inducement to said tenant to assign and turn over the possession of said premises, he agreed to and did give such tenant the rents and occupancy of certain other premises in Elroy, for a certain length of time, without any further or other consideration; and that thereupon, in pursuance of said corrupt and fraudulent agreement, plaintiffs' tenant vacated and transferred the possession and all his rights as tenant of the plaintiffs to the defendant *Whicher*.

It is further stated that in the summer of 1882 the defendants, or one of them, procured two other tax deeds of the premises, and placed them on record; that immediately after the defendants had obtained possession of the premises in the manner described, they rented them to different parties, and collected the rents, and that they have since constantly rented them, and received the rents for the use of the same to the amount of $575; that at the time the tax deeds were taken the defendants paid to the county $123.27, and that they received in net income from the premises, within the first two years after they obtained possession thereof, a sum sufficient to repay them the amount expended, with legal interest, and for the current taxes.

Now, it is said on the part of the plaintiffs that these allegations show that the defendants obtained possession of the premises originally by a collusive and fraudulent arrangement with their tenant, and that in equity the plaintiffs are entitled to an accounting of the amount of the rents which they have received over and above taxes and other proper charges. We fully concur in that view of the law. It seems to us very plain that when the defendants obtained possession of the premises by the fraudulent arrangement described, they became in law and in fact tenants of the plaintiffs; that their possession was the possession of the plaintiffs; and that the relation of landlord and tenant ex-

isted between the parties when this action was commenced,— on' the 16th day of July, 1889. We see no possible escape from this conclusion. It would be an intolerable state of law which would sanction a possession obtained by fraud, and give a party all the advantage of his wrong. We are confident the law will sanction no such injustice. When the defendants acquired possession of the premises, the relation of tenant to the plaintiffs immediately arose, and they are subject to all the consequences of that relation. The defendants will not be permitted to deny the title of their landlord, nor to claim that they hold possession under some title hostile to his, until they have restored the possession or done that which is equivalent to it.

This is elementary law, and is founded in justice and good sense, and hardly requires the citation of authority to sustain it. We will, however, quote some remarks from the opinion of *Emerick v. Tavener*, 9 Grat. 223, 58 Am. Dec. 217. The judge says: "The doctrine is well settled that, if a privity of estate have existed between parties to an action, proof of title is ordinarily unnecessary; for a party is not permitted to dispute the original title of him by whom he has been let into possession. A tenant cannot be permitted to question or impugn the title of his landlord during the continuance of the tenancy, nor until he has restored the possession or done what would be regarded as equivalent; nor can he be permitted to deny that the possession so received was the possession of his landlord. And the rule is extended to the case of a tenant acquiring the possession by wrong against the owner, and to one holding over after the expiration of his lease; and it applies whether the question arises directly in an action brought against the tenant to recover the possession, or in a collateral form in some other action." This whole opinion is instructive, and enriched with numerous authorities bearing on the law of landlord and tenant. " When once this re-

lation of landlord and tenant is established by the act of the parties, it attaches to all who may succeed to the possession through or under the tenant, whether immediately or remotely, the succeeding tenant being as much bound by the acts and admissions of his predecessor as if they were his own." *Emerick v. Tavener, supra.*

Our statute enacts: "Whenever the relation of landlord and tenant shall have existed between any persons, the possession of the tenant shall be deemed the possession of the landlord until the expiration of ten years from the termination of the tenancy; or, where there has been no written lease, until the expiration of ten years from the time of the last payment of rent, notwithstanding such tenant may have acquired another title, or may have claimed to hold adversely to his landlord; but such presumption shall not be made after the periods herein limited." Sec. 4216, R. S. There is nothing stated in the complaint which would repel the presumption of the statute, and it follows, of course, that the defendants occupied the same position as respects the plaintiffs that the tenant, Straight, held.

It cannot be successfully maintained, we think, that a court of equity will refuse to exert its jurisdiction when invoked by infant heirs to call their tenant to an accounting for moneys received from their estate. More especially should the court interfere and grant relief when necessary to protect such infants against fraud and imposition. It is said that it does not appear from the facts alleged that the defendant *Mrs. Bunce* did anything wrong or improper in acquiring possession of the property or in obtaining the tax deeds upon it, and therefore should not be called upon to account for rents. But she succeeded to the tenant, Straight, and occupies his position  If he could not acquire a tax title, and claim to hold possession under it, adverse or hostile to his landlord, then certainly she cannot. Her possession, under the circumstances, will cer-

Pulford and others vs. Whicher and another.

tainly not set the statute of limitations running in her favor, for in legal contemplation the possession has been all the time in the plaintiffs, as landlords and owners. It is evident that this result follows whether the life-estate has been surrendered or not. If that estate still exists, then the tenant for life has had possession in law from a time prior to the issue of the tax deeds and tax certificates. And it appears to us clear that the defendants, upon the facts stated, cannot take any benefit or advantage of the title acquired under the tax deeds as against the reversioners or tenant for life. Nor can there be any doubt about the jurisdiction of a court of equity to aid and protect the plaintiffs by enforcing an accounting. Though the tax deeds are barred, yet the plaintiffs in the accounting are willing to credit the defendants with the amount paid for taxes and charges. This will do justice between the parties.

Aside from the three years limitation, which must be held to have run against the tax deeds, the other limitations of the statute do not seem to apply to the case. If the proof sustains the complaint, the court should, on the hearing, cancel the tax deeds, even though they are barred, in order to grant complete relief; for, though they are void, they may be possibly used to the detriment of the plaintiffs at some future time.

It is unnecessary to notice the other questions discussed.

*By the Court.*— The order of the circuit court is affirmed, and the cause remanded for further proceedings.