## WILLIAMS *v.* FOX.

1. LANDLORD AND TENANT — LANDLORD'S TITLE — ESTOPPEL OF TENANT—COLLUSION WITH ADVERSE CLAIMANT.

> One who obtains possession of land by collusion with the tenant of another is, like the tenant, estopped to deny the possessory right of that other.

2. ADVERSE POSSESSION—TAX TITLE HOLDER—COLLUSIVE POSSESSION.

> The holder of a void tax title cannot invoke the statute of limitations in favor of an occupation of the land following possession obtained by collusion with the tenant of the original owner, such possession not being adverse.

Appeal from Muskegon; Sessions, J. Submitted February 24, 1908. (Docket No. 29.) Decided March 31, 1908.

Bill by Orlin D. Williams against Florence M. Fox to quiet title to land. The defendant filed an answer in the nature of a cross-bill for the same relief. From a decree for complainant, defendant appeals. Reversed, and decree entered for defendant.

*Cross, Lovelace & Ross,* for complainant.

*Philip W. Kniskern* (*Stephen H. Clink,* of counsel), for defendant.

CARPENTER, J. This is a controversy over the ownership of certain land situated in the county of Muskegon. Each party claims to be the owner. Complainant is in possession. He holds a tax deed which is and which he concedes to be void. His claim is however that he has acquired title by an adverse possession of five years under said deed. Defendant is the holder of the original title. Each party seeks a decree directing a conveyance from the other party. The trial court granted relief to com-

plainant. Defendant appeals. Does the testimony establish complainant's claim of an adverse possession of five years under his tax deed?

Complainant's tax deed was applied for in March or April, 1897. It was executed August 2, 1897. At that time the land in controversy belonged to defendant's sister (who subsequently conveyed to defendant) and it was in the possession of complainant's father and mother as tenants of the owner. The owner resided outside the State. She had an agent—a Mr. Hendricks—who lived in the neighborhood. At the time complainant purchased the tax deed he lived in Lowell in this State. He testifies that the latter part of May or the first of June he went to Muskegon county—taking with him some household furniture—for the purpose of taking possession of the land under his tax deed; that his father and mother informed him that they had been notified to leave the premises; that the next day after he arrived they did leave, carrying their household effects with them, and in about eight hours returned as his tenants. They remained on the place until some time the next year when his father died. Complainant himself moved on the place with his family in April, 1898, and has remained there since that time. No notice was given to the owner of the land of this alleged change of possession, and it does not appear that he knew of complainant's claim until July, 1902. Neither was there any notice given to the agent, Hendricks. But complainant testifies:

" He [Hendricks] saw me that day. My people were moved when he went by. I was cutting some wood when he went by, at the end of the house. My stuff was then unloaded."

It does not appear, however, that Hendricks knew that complainant's parents had moved, and in this connection it should be stated that complainant's testimony respecting the alleged notice to quit was hearsay and had no tendency to prove that the notice was actually given. Nor was the circumstance that complainant was cutting wood

of any consequence. For prior to that time, as complainant testifies, he "would go there and stay a few days and get up some wood." There is in the foregoing testimony nothing to indicate that prior to July, 1902, the owner had either actual or constructive notice of the adverse nature of complainant's possession. In the absence of such notice, was the possession adverse? We think not.

The arrangement made with his father and mother, whereby complainant acquired possession, was obviously collusive. After the making of that arrangement, as well as before, the father and mother continued to be the tenants of the real owner. They were estopped from disputing the possessory right of the real owner, and so, too, was complainant estopped from disputing that possessory right. *Bertram* v. *Cook*, 44 Mich. 396. Under these circumstances, it cannot be said that complainant held possession by virtue of his tax deed. He held possession as tenant, and that possession was in no sense adverse to that of his landlord, the real owner. He could not, therefore, invoke the statute of limitations. That statute did not run in his favor. *Pulford* v. *Whicher*, 76 Wis. 555.

Authorities which hold that a tenant may attorn to the real owner have no application. Complainant never was the real owner, and, at the time the alleged attornment took place, had no color of title to the land in controversy. Under no circumstances then can it be said that complainant's title was adverse until July, 1902. Assuming that it became adverse at that time, complainant is not entitled to relief, for five years from July, 1902, had not elapsed at the time this suit was commenced. It was commenced in February, 1907. We conclude that defendant and not complainant is the real owner of the land in controversy.

The decree of the circuit court must therefore be reversed and a decree entered in this court in favor of defendant.

A question is raised as to complainant's right to recover for improvements. This question cannot be adjudicated on this record. Neither the pleadings nor the evidence

permit it.   We think, however, that complainant should be permitted to have that question adjudicated, and, therefore, the decree in this case will be without prejudice to his right to bring an independent action to enforce his lien for improvements.   Defendant will recover costs of both courts.

GRANT, C. J., and HOOKER, MOORE, and McALVAY, JJ., concurred.