PERSZYK and another, Respondents, vs. THE MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant.

*April 2—May 1, 1934.*

For the appellant there was a brief by *Shaw, Muskat & Paulsen* of Milwaukee, attorneys, and *Wm. F. Schanen* of Port Washington of counsel, and oral argument by *Martin R. Paulsen.*

For the respondents there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Howard T. Foulkes* of counsel, all of Milwaukee, and oral argument by *Mr. Foulkes.*

The following opinion was filed May 1, 1934:

FRITZ, J. The questions on this appeal are in relation to the title claimed by Anna and Mamie Perszyk (hereinafter called the plaintiffs) to the land which The Milwaukee Electric Railway & Light Company (hereinafter called "The Electric Company") petitioned to acquire by condemnation. That title was involved in an action by *Wanta et al. v. Perszyk et al.,* in which it was finally adjudged, pursuant to the decision and mandate of this court, reported in 207 Wis. 282, 240 N. W. 183, 241 N. W. 377, that each of the plaintiffs herein, as a child and heir of Teofil Potrykus, deceased, was entitled to an undivided one-third share and interest in that land. The chain of title upon which the plaintiffs rely, as well as the alleged defects therein and the facts in relation thereto, are stated in connection with that former decision. A restatement thereof in detail is unnecessary. It suffices to note that the plaintiffs claim that their father, Teofil Potrykus, was the owner of the land when he died, intestate, on August 17, 1918; that, on the one hand, he acquired the title in fee—subject only to a life estate vesting in John Schramka as a tenant by curtesy—by virtue of a deed executed on November 27, 1916, by the six children and heirs at law of Marcianna Schramka, in whom the title vested up to the time that she died intestate, in June, 1912, survived by her six children and her husband, John Schramka, who thereafter, as a tenant by curtesy, continued in possession of the land until he died in May, 1927; and that, on the other hand, Teofil Potrykus acquired title on August 22, 1916, by virtue of a deed executed by William Ahlhauser, to whom the tax

title had been conveyed by a tax deed executed on August 21, 1916, upon a tax certificate sold to him in May, 1913, upon John Schramka's failure as tenant by curtesy to pay the taxes for 1912.

At the outset the plaintiffs contend that, inasmuch as the Electric Company instituted the condemnation proceedings, which resulted in the award and appeal therefrom involved herein, it cannot question, but is bound to recognize, the right, title, and interest of the plaintiffs in the property condemned. That contention is based upon the statement in *Skalicky v. Friendship E. L. & P. Co.* 193 Wis. 395, 214 N. W. 388, that—

"when one seeks to take, by right of eminent domain, another's property, and in the petition recites, as must be done, title in and ownership by his adversary, such taker is thereafter bound by such expressed recognition of title and cannot afterwards be heard to assert to the contrary, nor compel the one so recognized as owner to prove or defend his title."

However, that rule is not applicable in this action because the Electric Company expressly alleged in its petition that it instituted the condemnation proceedings pursuant to the provisions of sec. 32.15, Stats., in order that its title may be freed from such defects as exist by reason of the claims of Anna and Mamie Perszyk. That section, 32.15, Stats., expressly authorizes perfecting the title to property which a person having the power to acquire property by condemnation seeks to acquire, "if such title is defective," and provides that "such person may proceed to acquire or perfect such title in the manner provided in this chapter."

The plaintiffs also contend that, as the Electric Company had knowledge of the pendency of the action of *Wanta v. Perszyk, supra,* and of the defect in the title which was litigated in that action, it is bound by the final decision and

judgment therein. The consideration of that contention, which was sustained by the trial court, necessitates noting the following additional facts:

On July 24, 1929, the Electric Company, in consideration of the payment of $1,000, acquired an option from the heirs of Marcianna and John Schramka for the purchase of the land in suit for $31,000; and on October 24, 1929, that option, in consideration of the payment of another thousand dollars, was extended to March 24, 1930. On March 1, 1930, the Electric Company accepted that option in writing, and demanded an abstract showing a merchantable title. On March 28, 1930, the Electric Company was informed by its attorneys that there was an outstanding defect in the title, because of which an action to quiet title with Teofil Potrykus and his wife, Katie Potrykus, as defendants, would have to be brought. On April 17, 1930, the Electric Company paid $15,000 on account of the purchase-price to the Schramka heirs and received from them a written receipt which required them to prosecute an action to quiet title, and which gave the Electric Company possession of the land and the right to remove buildings therefrom. In the meantime, in October, 1929, the Electric Company had been permitted to enter upon the land to make surveys; since March, 1930, one of its crew had occupied a cottage; and on April 17, 1930, it commenced constructing a power plant thereon. On May 15, 1930, the Schramka heirs, on a complaint verified April 17, 1930, commenced an action to quiet title; and on June 30, 1930, they commenced a second action for that purpose. In that litigation Anna and Mamie Perszyk, the plaintiffs herein, answered, and also filed cross-complaints, in which they prayed to have title declared and quieted in them, with the result that judgment was ultimately entered in their favor, in accordance with the mandate of this court in *Wanta v. Perszyk, supra.* However, no *lis pendens* was filed in that litigation by any of the plain-

tiffs therein, or by the plaintiffs herein, in respect to their cross-complaints in that litigation. The judgment, as first entered in that litigation on December 16, 1930, was adverse to the claims of Anna and Mamie Perszyk, but, nevertheless, the Electric Company was advised by its attorneys, on December 24, 1930, not to pay the balance of the purchase-price to the Schramka heirs until after the time to appeal from that judgment expired on December 16, 1931. However, the Electric Company, on January 3, 1931, paid that balance, with the exception of $500, to the Schramka heirs on delivery of their deed to the land, and an agreement that, if an appeal was taken from that judgment, the Electric Company could furnish legal counsel to consult with the attorney retained by the Schramka heirs. Subsequently, an appeal was taken and prosecuted from that judgment, and it was ordered reversed by a mandate filed December 11, 1931. The Electric Company's attorneys were not consulted by the attorney for the Schramka heirs in relation to that appeal until after December 11, 1931, when counsel for the Electric Company participated with the attorney for the Schramka heirs in obtaining affidavits, which were filed on a motion for a rehearing which this court denied.

In the action now at bar the trial court found that, although no *lis pendens* was ever filed by any party in the action to quiet title, the Electric Company at all times, prior and subsequent to the institution of that action, had full knowledge and information in regard to the pendency thereof; and the court concluded that the Electric Company was bound by the final decision and judgment in that action, and, therefore, was estopped from asserting any claim of title adverse to the title of the plaintiffs herein.

Those conclusions cannot be sustained under the facts in this action because it is undisputed that the Electric Company had entered into its contract and paid a substantial portion of the price for the purchase of the land, and had

entered into possession thereof prior to the commencement of both actions to quiet title. In view of those facts, and the further fact that, although it had openly entered into possession of the land, it was not joined as a party in those actions and was never served with any *lis pendens* or pleadings therein, it is not bound by that final judgment, even though it may have had information and knowledge in regard to the pendency of those actions. As is stated in 1 Freeman, Judgments (5th ed.), p. 968:

"One in possession of land under a contract to purchase is not in privity with the vendor with respect to the judgment in an action begun after the making of the contract."

The rule is stated as follows in 38 C. J. p. 58:

"A holder of an antecedently acquired equity may, it seems, purchase the legal title *pendente lite* without being bound by the decree, and the general rule is that, where there is an executory contract of purchase before the action is pending, a purchaser is not a *pendente lite* purchaser so as to be bound by the decree, although he does not receive the deed, or complete the payment of the purchase price, until the action is pending."

See also 38 C. J. pp. 57, 58; 17 R. C. L. 1028; 2 Black, Judgments (2d ed.), p. 851. So, in *Coe v. Manseau,* 62 Wis. 81, 22 N. W. 155, this court held that (syllabus)—

"Actual possession of the vendee under an unrecorded contract for the sale of land is sufficient to put all persons upon inquiry as to his right, and they are chargeable with that knowledge of the vendor's title which they would have obtained by such inquiry."

This court then said:

"If one purchases the land, or prosecutes a suit directly affecting the title, without inquiry of the person in possession as to his right, it is regarded as a fraud and an act of bad faith, the punishment of which is to hold such person in equity by implication to a knowledge of such facts as he would have ascertained if he had inquired. *Wickes v. Lake,* 25 Wis. 71."

In *Gelpeke v. Milwaukee & Horicon R. Co.* 11 Wis. *454, this court, in discussing the parties against whom a writ of assistance to execute a judgment was effective, said:

"That judgment is binding upon all the parties against whom it was rendered, and all others coming into possession under them after suit brought, and not in pursuance of a specific right in the property previously acquired. . . . But that judgment is not binding upon those who are not parties, and did not come in under parties in the manner just stated. And if any such other person is in possession, claiming the property by a title adverse to that of the parties to the suit, or under a right acquired before the suit, the officer is not bound, or authorized to execute the writ of assistance against him."

To the same effect see *Whitney v. Brunette,* 15 Wis. *61; *Coleman v. Hunt,* 77 Wis. 263, 45 N. W. 1085; *Hart v. Moulton,* 104 Wis. 349, 80 N. W. 599; *Mitchell v. Lyons,* 163 Wis. 399, 158 N. W. 70; *Dull v. Blackman,* 169 U. S. 243, 18 Sup. Ct. 333, 42 L. Ed. 733. Consequently the Electric Company is not estopped by the judgment in the former action to contest the title claimed by the plaintiffs herein as heirs of Teofil Potrykus.

On the trial of the action now at bar, the parties vigorously relitigated the issue as to whether a certain deed, executed by Teofil Potrykus on August 23, 1916, and which, prior to alterations wrongfully made therein, was dated and acknowledged on that date, was delivered to John Schramka during the lifetime of Teofil Potrykus. The facts and circumstances, which were in evidence in the former litigation, in relation to that deed, were discussed in *Wanta v. Perszyk, supra,* with the result that we then concluded that the delivery thereof by Teofil Potrykus was not established. On the trial of the action now at bar the court also found that that deed was not delivered during the lifetime of Teofil Potrykus, and that the title to the land had been acquired by Teofil Potrykus by virtue of a deed delivered to him by

William Ahlhauser on August 22, 1916, and had continued to vest in Teofil Potrykus until his death. The Electric Company contends that those findings should be set aside because they are contrary to the clear preponderance of the evidence, and also because they are contrary to the findings of a jury in a special verdict which was taken by the court. In respect to the jury's findings, the court ruled that, under sec. 32.13, Stats., on appeals from awards of commissioners in condemnation proceedings, issues as to suggested defects in title were to be determined by the court, and that a jury's verdict thereon was merely advisory. Thereupon the court rejected those findings because it concluded that the competent, probative evidence did not support them. Those rulings were not erroneous. As to the ruling in relation to the jury's verdict, it suffices to note that, although sec. 32.11, Stats., provides that on an appeal from an award by commissioners in condemnation proceedings, "the action shall be tried by jury unless waived," it is expressly provided in sec. 32.13, Stats., that—

"*If any defect of title* to or incumbrance upon any parcel of land *is suggested upon any appeal,* or if any person petitions the court in which an appeal is pending setting up a claim adverse to the title set out in said petition to said premises and to the money or any part thereof to be paid as compensation for the property so taken, *the court shall thereupon determine the question so presented.*"

It is obvious that under the latter provision issues as to defects in title, or claims adverse to the title set out in the petition, are to be determined by the court, and not by the jury.

As to the court's finding—notwithstanding the jury's verdict to the contrary—that the deed executed by Teofil Potrykus on August 23, 1916, was not delivered, we are not convinced that the court's finding is against the clear preponderance of the evidence. However, if, as the Electric Company now contends, and as now seems probable, Teofil Potrykus actually had no real interest in the land, because

John Schramka's money was used to acquire the tax certificates and tax title for his own use and benefit, but in the name first of his friend William Ahlhauser and then in the name of his friend Teofil Potrykus, in order to conceal John Schramka's interest in the land from his creditors, etc., then the conveyance of that tax title by deed from Teofil Potrykus to John Schramka, under date of August 23, 1916, would have operated merely to discharge the lien for taxes which it was the duty of John Schramka, as the tenant by curtesy, to pay. He could not thus acquire title in derogation of the rights of his deceased wife's children, as the remaindermen. In that event, in so far as any claim of title in John Schramka, by virtue of the tax certificate and tax deed issued to William Ahlhauser, is concerned, the fee title remained in the Schramka children, subject to their father's right of curtesy, just as it was before that tax deed was issued.

On the other hand, if Teofil Potrykus, in fact, acquired that tax title in his own right by virtue of the deed from William Ahlhauser, and there was no delivery of Teofil Potrykus' deed of August 23, 1916, to John Schramka, then, as Schramka apparently continued in possession of the land as tenant by curtesy until he died in May, 1927, and as Potrykus failed to go into possession thereof under his tax-deed title, or to bring an action to recover possession under that deed within three years after the execution thereof on August 21, 1916, his rights by virtue of that tax-deed title became barred on August 22, 1919, by reason of sec. 75.26, Stats. *Jones v. Collins,* 16 Wis. *594, *602; *Stephenson v. Wilson,* 50 Wis. 95, 6 N. W. 240; *Dreutzer v. Baker,* 60 Wis. 179, 18 N. W. 776; *Pulford v. Whicher,* 76 Wis. 555, 45 N. W. 418; *Midlothian Iron Mining Co. v. Belknap,* 108 Wis. 198, 84 N. W. 169; *Chicago, St. P., M. & O. R. Co. v. Bystrom,* 165 Wis. 125, 161 N. W. 358; *Perkins v. Perkins,* 173 Wis. 421, 180 N. W. 334, 181 N. W. 812. In either event, whether the outstanding tax title became barred

by Teofil Potrykus' failure to go into possession or to bring an action to recover possession within three years after the date of the tax deed, or whether that title was voided by John Schramka's acquisition thereof, while he was obligated, as tenant by curtesy, to pay the taxes for 1912, on account of which that tax deed was issued, in the final analysis the title of the Schramka heirs, subject to their father's right of curtesy, was never defeated by that tax deed. Neither John Schramka nor Teofil Potrykus thereby acquired any title which terminated the rights of the Schramka heirs as remaindermen.

There remains then the question whether, as we held in *Wanta v. Perszyk, supra,* Teofil Potrykus acquired the title in fee of the Schramka heirs (subject to their father's life estate as tenant by curtesy), by virtue of their deed to Teofil Potrykus, which was dated November 27, 1916, and was recorded December 26, 1916. On the trial of the action at bar, the court found that the Schramka heirs executed that deed on November 27, 1916. The court did not expressly find or conclude that that deed was actually delivered to Teofil Potrykus. However, as the court did conclude that the Schramka heirs thereby conveyed all their interest in the land to Teofil Potrykus, it is evident that the court regarded that deed delivered in fact. In relation to that deed, counsel for the Electric Company contend in their brief that—

"The fact that the Potrykus family did not go into possession raises one of two inferences : either the deed was not delivered or else it was delivered for the purpose of collateral security as will hereafter appear."

As Teofil Potrykus, as the owner of an estate in remainder, would not have become entitled to possession under the remaindermen's deed until after the death, in 1927, of John Schramka, the tenant by curtesy, there is, of course, no basis for any such inference until after Schramka's death, which did not occur until eight years after Teofil Potrykus had

died. Under those circumstances the failure of Potrykus or his heirs to enter into possession is of but little significance. Neither are the findings of the jury, in the special verdict—which the court rejected as merely advisory—that that deed was not delivered, and that it was intended as security for a loan which Teofil Potrykus had made to John Schramka, of significance. As the court rightly ruled, the evidence relied upon in support of those findings was, on the one hand, largely hearsay, self-serving and incompetent, and, on the other hand, the competent, probative evidence does not support the jury's answers. Under the competent evidence we are not warranted in disturbing the evident determination of the court that there was a delivery of that deed. The undisputable fact that it was duly recorded within a month after its date, and within the lifetime of all parties thereto, affords sufficient presumptive evidence of its delivery (18 C. J. pp. 207, 419, 420; *Chambers v. Chambers,* 227 Mo. 262, 284, 127 S. W. 86) to sustain the court's decision, notwithstanding other conflicting testimony on that issue.

The issue as to whether that deed was intended only as security was not litigated in former actions. It was not raised in *Wanta v. Perszyk, supra,* until, on a motion for rehearing, *ex parte* affidavits were filed to supply proof, which could not be considered then because it was not rightly of record. On the other hand, the evidence which is now relied upon by the Electric Company in support of its contention on that issue is primarily incompetent and irrelevant testimony by Frank Schramka, one of the Schramka heirs, that it was his intention in signing that deed that it was to be collateral for a loan, and also by each of the five other heirs that each understood from what John Schramka, their father, said to them when they signed that deed that it was to be security for a loan by Teofil Potrykus. None of those witnesses testified, and there was no other evidence as to any transaction with or in the presence of Teofil Potrykus, as to

the purpose of that deed, or the circumstances or conditions under which it was delivered to him. There is, however, some proof that Teofil Potrykus in 1916 and 1917, and his wife in 1918 and 1919, had loaned money to John Schramka; that Teofil Potrykus had paid taxes on the land in suit for the years 1916 and 1917, and that Katie Potrykus had paid taxes on the land in suit for the years 1918 and 1919; that on proceedings in probate to compel Katie Potrykus to account as administratrix of the estate of Teofil Potrykus, there was testimony that John Schramka had owed about $960 to the estate; and that by a check, dated July 14, 1925, and signed by a daughter of John Schramka at his direction, $500 had been repaid to Katie Potrykus. Likewise, checks dated in July, 1924, for $40, and October 6, 1920, for $250, and indorsed with the name of Katie Potrykus were offered in evidence to prove other payments to Katie Potrykus on that indebtedness, but those checks were excluded upon her denial that she had indorsed them. Furthermore, an abstract of title discloses a recorded agreement, under which Katie Potrykus, on July 30, 1919, agreed, "upon payment of the amount due to me," to convey the premises to the executor of an estate which owned mortgages thereon executed by John Schramka. Those transactions indicate that the relationship of debtor and creditor existed between John Schramka and Teofil Potrykus in 1916 to 1918; that as late as 1925 John Schramka had paid $500 on the indebtedness to Teofil Potrykus' estate; that other payments had been made thereon; that the deed of November 27, 1916, which was executed by the Schramka heirs, may have been delivered to Teofil Potrykus merely as collateral security; and that his interest, and the interest of his heirs thereunder, should be held to be limited to the security afforded thereby for the payment of such balance of that indebtedness as remains unpaid. However, that issue cannot safely be determined on the present record because of the hearsay, incom-

petent and indefinite nature of most of the evidence offered in relation thereto. As that issue does not seem to have been fully litigated, and as the trial court omitted making any finding which expressly disposed of that issue, it is proper and necessary, in the interests of justice, under sec. 251.09, Stats., to reverse the judgment herein and to remand the cause for a retrial solely on that issue. *Walter v. Four Wheel Drive Auto Co.* 213 Wis. 559, 252 N. W. 346, 351.

The Electric Company also contends that, by tacking the possessions of John Schramka and his children to that of the Electric Company, they were in continuous adverse possession of the land for a period of ten years under color of a recorded deed. That contention is based, in part, upon the theory that the tax deed of August 21, 1916, which had been paid for by John Schramka, but was issued in the name of William Ahlhauser, and to conceal John Schramka's interest in the property from his creditors, operated to cut off his estate by curtesy, and that therefore his occupancy thereafter under a tax-deed title could not be considered as the continuing occupancy by the life tenant. However, for reasons stated above, John Schramka could not, by virtue of that tax title, claim any such rights either in himself, or in William Ahlhauser or Teofil Potrykus, acting at his instigation for his benefit, and in concert with him. For the reasons stated, and under the authorities cited in *Wanta v. Perszyk, supra,* John Schramka's possession, which continued until his death in May, 1927, is presumed to have been by virtue of his right as the tenant by curtesy, and not adverse to those who were entitled to the estate in remainder.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial on the issue stated in the opinion.

A motion for a change of mandate was denied, with $25 costs, on June 26, 1934.