# Joshua S. Inloes' Lessee, *vs.* George C. Harvey.

A purchaser *pendente lite* is bound by the judgment or decree rendered against the party from whom he makes the purchase.

Appeal from the Superior Court of Baltimore city.

*Ejectment* brought by the appellant, on the 9th of May 1855, to recover certain leasehold property then in the possession of the appellee. Plea, *non cul.*

*Exception.* The plaintiff gave in evidence certain deeds proving title in John Zell and Alexander Harper, on the 24th of September 1850, on which day they conveyed the property to Thomas W. Vigurs, who took possession thereof. The plaintiff then further offered as evidence of his title a deed

from Vigurs to him, as trustee, dated the 10*th of March* 1854, under which he took possession of the property. This deed recites the appointment by the circuit court for Baltimore county, as a court of equity, in a cause therein pending, of Inloes as trustee of the complainants in said cause, under a ·deed of trust filed therein, and that, on the petition of the complainants, it was ordered by said court, on the 10th of March 1854, that the trustee, Inloes, should invest the net proceeds of sale in said case, or so much thereof as was necessary, in the two parcels of land mentioned in said petition, one of which is that conveyed by the deed. The deed then proceeds, in consideration of $1750, paid by Inloes to Vigurs, the receipt of which is acknowledged, to convey the property to Inloes, as trustee as aforesaid.

The defendant then gave in evidence, on his part, the record of certain proceedings in equity in the circuit court for Baltimore city, instituted by Susan E. Taylor, against Vigurs and others, the object of which was to set aside, for her benefit, the title of Vigurs, under the deed to him from Zell and Harper, as having been acquired by him fraudulently, he having taken the title to himself, in his own name, as of his own absolute estate, whereas he should have taken it as *trustee* for the complainant, having purchased the same with *her money*, and to cause the same to be conveyed and assured to her. This record shows that this bill *was filed on the* 21*st of February* 1854, and the *subpœna* thereon, issued the *same day*, was *served on Vigurs before the* 28*th of February* 1854, on which day it was *duly returned.* After answer and other proceedings, a decree was passed on the 30th of November 1854, by which the *title of Vigurs* was *annulled,* and he was ordered to *convey* and *deliver* the property to *Harvey,* as trustee for the complainant, under a marriage settlement between the complainant and Wm. B. Dukehart, whom she had married pending the proceedings, and who was duly made a party thereto. On the 15th of December 1854, an *injunction* was issued to compel Vigurs to perform the decree, and the *persons .in possession* to deliver up the property, which was returned *"non est"* as to *Vigurs,* and was *served* upon *Inloes* on the

21st of December 1854, who *refused to obey the same*. A writ of *habere facias possessionem* was then issued on the 12th of January 1855, and the sheriff, by virtue thereof, put *Harvey in possession of the property*, and he continued in the possession so acquired, and held the property at the time of bringing this ejectment, under the aforesaid decree, and as trustee of said Susan E. Dukehart. Inloes was *never made a party* to the proceedings under which this decree passed.

Whereupon the plaintiff asked the court to instruct the jury that, upon the evidence offered, if believed by them, the *legal title* to the possession of the premises, for the recovery of which this action is brought, was vested in Inloes by the deed of assignment from Vigurs to him, and remained vested in him at the time of the demise laid in the declaration, and that the plaintiff is entitled to recover, notwithstanding the decree and other facts offered in evidence by the defendant. This prayer the court (LEE, J.) refused to grant, and to this ruling the plaintiff excepted, and the verdict and judgment being against him, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*Edward O. Hinkley* and *Thos. S. Alexander*, for the appellant:

The rule *pendente lite nil innovetur*, is not universal in its application. There are cases of *hardship* in which it does not apply, and there is no reason why a party, situated as Inloes is in this case, should not be called in and have an opportunity of making defence, before he is peremptorily turned out of possession, without notice. He was never *made a party* to the proceedings in which the decree was passed, and was a *bona fide* purchaser, *pendente lite*, for a valuable consideration and without actual notice. Although the decree entered in his absence is *prima facie* evidence against him, it would be competent for him, on any supplementary proceeding, to show collusion between the parties to the decree, or any other circumstance rendering it against equity to enforce the decree

against him. We contend that he should not be turned out without notice, and that the writ of *habere facias possessionem* will never go against such a purchaser, without notice first given to him to *show cause*. In 2 *Story's Eq.*, sec. 908, it is conceded that the title of purchasers *pendente lite* is not "absolutely null and void at all times, and for all purpose," and that the title so acquired must, in some cases, be pursued, and it is there said, an *injunction* will be granted to restrain a party from making *vexatious* alienations of real property *pendente lite*, for in every such case the plaintiff may be put to the expense of making the vendee *a party to the proceedings;* and, at all events, his title, if he prevails in the suit, may be embarrassed by such new outstanding title under the transfer. Chancellor Kent always held, that you must, in some cases, follow the title acquired *pendente lite*. See, also, *Story's Eq. Pl.*, secs. 351, 351 (a,) for cases in which it is held to be necessary to make such a purchaser *a party* to the proceedings. And, further to sustain our views on this point, we refer to *Mitford's Pl.*, 73, 74. *Calvert on Parties*, 100. 1 *Hogan*, 202, *L'Estrange vs. Robinson*. 4 *Dow*, 435, *Daly vs. Kelly*. 2 *Drury & Warren*, 362, *Higgins vs. Shaw*. 2 *Ves. & Bea.*, 200, *Metcalfe vs. Pulvertoft*. 13 *Simons*, 516, *Solomon vs. Solomon*. 11 *Beavan*, 502, *Johnson vs. Thomas*. 1 *Peters*, 149, *Greenleaf vs. Queen*. 4 *Johns. Ch. Rep.*, 38, *Green vs. Slayter*. 2 *Johns. Ch. Rep.*, 441, *Murray vs. Lylburn*. 11 *Wend.*, 442, *Parks vs. Jackson*. 6 *J. J. Marshall*, 519, *Yoder vs. Swearingen*. 3 *A. K. Marshall*, 220, *Murray vs. Johnson*. 3 *Littell*, 365, *Carr vs. Callaghan*. 1 *Iredell's Eq. Rep.*, 146, *Proctor vs. Ferebee*.

It is further insisted, that, whatever may be the effect of the decree on the conscience of a party purchasing *pendente lite*, with actual or constructive notice of the proceedings, it cannot operate *at law* as a transfer of the legal title acquired by the purchaser, from such purchaser to the party claiming the benefit of the decree.

*F. K. Howard* and *S. T. Wallis* for the appellee:

The act of 1785, ch. 72, sec. 13, provides, that in all cases where a decree is passed for a conveyance, and the party against

whom it shall pass shall neglect or refuse to comply therewith, such decree shall stand, be considered and taken *in all courts of law and equity* to have the same operation and effect as if the conveyance had been executed conformably to such decree. If, then, *Inloes* was a party bound by this decree, the *legal title* to the property is, by force of it, vested in the defendant, the record showing that Inloes has refused to obey it. That he is so bound, is well settled. He was a purchaser *pendente lite* of the title of *Vigurs.* The proceedings had for their object to set aside that title as *fraudulently acquired* by Vigurs, and resulted in a *decree* annulling the title and decreeing a conveyance to the complainant. Pending *this litigation,* Inloes becomes a purchaser of this very property, and if ever a case could arise in which the rule *pendente lite nihil innovetur* can be applied, this is one. The general rule on this subject is clearly defined. *Story's Eq. Pl., sec.* 156, and 1 *Story's Eq., secs.* 405, 406, where it is said, that "a purchase made of property *actually in litigation, pendente lite,* for a valuable consideration, and without any express or implied notice, in point of fact, affects the purchaser in the same manner as if he had such notice; and he will accordingly be bound by the judgment or decree in the suit." There is nothing to exempt this case from the operation of the general rule, which has been applied in numerous cases precisely similar, and has been sustained by repeated adjudications. See 1 *Pet.,* 299, *Mechanics Bank of Alexandria vs. Seton.* 1 *Johns. Ch. Rep.,* 566, *Murray vs. Ballou.* 7 *Johns. Ch. Rep.,* 65, *Jewett vs. Palmer.* 7 *Wend.,* 152, *Jackson vs. Andrews.* 2 *Dana,* 406, *Watson vs. Wilson.* 5 *Ohio,* 461, *Bennet vs. Williams.* 7 *Blackford,* 243, *Green vs. White.* 1 *Strobhart's Eq. Rep.,* 180, *Lewis vs. Mew.* 1 *Yeates,* 574, *Walker vs. Butz.* 27 *Penn. State Rep.,* 428, *Hersey vs. Turbett.* 31 *Miss. Rep.,* 83, *McCulsten vs. Miller.* 22 *Barb.,* 166, *Harrington vs. Slade.* 8 *Ala.,* 570, *Chaudron vs. Magee.* 2 *Randolph,* 93, *Newman vs. Chapman.* 6 *H. & J.,* 21, *Tongue vs. Morton.* 1 *H. & J.,* 386, *Garretson vs. Cole.* 2 *H. & G.,* 473, *Frazer vs. Palmer.* 2 *Md. Ch. Dec.,* 301, *Oliver vs. Caton.* 7 *Md. Rep.,* 537, *Feigley vs. Feigley.*

Le Grand, C. J., delivered the opinion of this court.

There is but one question involved in this case, and we think the Superior Court decided it correctly. It is, whether a purchaser *pendente lite* is bound by the judgment rendered against the party from whom he makes the purchase? This was an action of ejectment brought by the appellant to recover certain property of which he had been dispossessed under a writ of *habere facias possessionem*. The defence was, that in an equity proceeding against the person under whom he claimed, to set aside a conveyance alleged to have been made fraudulently, a decree was passed in conformity with the prayer of the bill, and the property secured to the complainant, and that during the pendency of this proceeding, the appellant purchased the property in question from the defendant. The Superior Court, in fact, decided that the appellant, being a purchaser *pendente lite*, was concluded by the decree in the equity proceedings, and, notwithstanding the very ingenious argument of the counsel for appellant, we are of opinion, decided correctly. We might cite many cases in affirmance of this view, but we content ourselves with a reference to *sections* 405 and 406 of 1 *Story's Eq. Jur.*, where will be found, stated with clearness, the law applicable to the subject, and the reasons of public policy on which it rests. In *section* 405 it is said: "A purchase made of property actually in litigation, *pendente lite*, for a valuable consideration, and without any express or implied notice in point of fact, affects the purchaser in the same manner as if he had such notice; and he will accordingly be bound by the judgment or decree in the suit." And in *section* 406 it is said: "Ordinarily, it is true, that the decree of a court binds only the parties and their privies in representation or estate. But he who purchases during the pendency of a suit, is held bound by the decree that may be made against the person from whom he derives title. The litigating parties are exempted from taking notice of the title so acquired; and such purchaser need not be made a party to the suit. Where there is a real and fair purchase without any notice, the rule may operate very hardly. But it is a rule founded upon a great public policy, for, otherwise, alienations made

during a suit might defeat its whole purpose; and there would be no end to litigation. And hence arises the maxim, *pendente lite nihil innovetur;* the effect of which is, not to annul the conveyance, but only to render it subservient to the rights of the parties in litigation. As to the rights of these parties, the conveyance is treated as if it never had any existence; and it does not vary them." See, also, 6 *H. & J.*, 21, *Tongue vs. Morton.*

This disposes of the case which was before the Superior Court. If there was any fraudulent design on the part of those who were the parties to the equity proceedings, to defeat the appellant, the latter, on proof of the fact, and the additional one, that, in execution of such fraudulent intention, he was in point of fact defrauded, he has his remedy in equity.

*Judgment affirmed.*