56 N.J. Super. 52 (1959)
151 A.2d 546
FOUR-G CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
SEBASTIAN RUTA AND VIRGINIA RUTA, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 6, 1959.
Decided May 19, 1959.
*54 Before Judges PRICE, SULLIVAN and FOLEY.
Mr. Daniel Parke Lieblich, argued the cause for plaintiff-respondent and cross-appellant.
Mr. Ralph W. Chandless argued the cause for defendants-appellants and cross-respondents (Messrs. Chandless, Weller & Kramer, attorneys).
*55 The opinion of the court was delivered by FOLEY, J.A.D.
This is an appeal from a judgment in money damages against defendants (referred to as "Ruta") and a cross-appeal by plaintiff (referred to as "Four-G") from that portion of the judgment denying it specific performance of a contract for the sale of lands. The case is not without history: Four-G Corporation v. Ruta, 25 N.J. 503 (1958); Id., 45 N.J. Super. 128 (App. Div. 1957).
On June 28, 1955 Ruta gave Four-G an option expiring October 12, 1955 to purchase the premises in question subject to an existing lease and an option granted to Del-Ed, a corporation. The latter instrument fixed July 1, 1961 as the expiration date of the option and $22,500 as the purchase price. Four-G exercised its option but, at the closing on November 10, 1955, disagreement arose respecting matters not mentioned therein. These concerned the demands of Four-G that it share in rents, that $900 posted by Del-Ed as security for the performance of the lease be released to it, and that there be deducted from the purchase price the amount of the commissions claimed by a real estate broker in connection with the transaction. The refusal of defendants to accede to these demands effectuated a collapse of the transaction and a walkout by Ruta.
On December 2, 1955 Four-G filed a complaint for specific performance and on December 5, 1955 a lis pendens was placed on record. At the pretrial conference held ten months later Four-G was allowed to amend its claims by adding thereto:
"Plaintiff further contends that in the event that the court should find the proposed deductions were without merit that it is still entitled to receive the property on payment of the full contract price."
The trial court denied specific performance, holding that the demand for deductions constituted a deviation from the terms of the option.
Appeal was then taken to the Appellate Division which unanimously affirmed the trial court, holding that Four-G *56 was not entitled to the credits it claimed at the time of the closing and so, having refused to purchase the property unless allowed such credits, it had not tendered the purchase price in accordance with the agreement.
Certification to the Supreme Court followed. 25 N.J. 44. Prior to the hearing of the resultant appeal, Del-Ed exercised its option and Ruta conveyed to King Cone and Reiter, the assignees of Del-Ed. This fact, although known by respondents' counsel (who had attended the closing), was not communicated to the Supreme Court and, as a result, the court decided the case upon the assumption that title to the property was in the respondents. The court held that although two of the credits which Four-G had sought at the closing were not properly claimed, the "general offer to perform" set forth in the complaint was sufficient in the circumstances to entitle Four-G to specific performance upon payment of the agreed cash less the credit of $900 deposit under the lease and the tender of a bond and mortgage for the balance of the purchase price. The judgment of the Appellate Division was reversed and the cause remanded to the Chancery Division for proceedings in conformity with the opinion. 25 N.J. 503.
Thereafter, Ruta was permitted to amend the answer to include an additional affirmative defense to the effect that the assignees of Del-Ed had on June 13, 1957 exercised its option and purchased the property. When the matter came on for hearing in the Chancery Division, testimony was given by a title searcher that the deed from Ruta to King Cone and Reiter had been recorded on September 12, 1957. It further appeared that the instrument bore revenue stamps indicating a cash consideration of $14,000 and that it was subject to a mortgage in the sum of $7,500.
The trial court held that the conveyance was a complete bar to a decree of specific performance but awarded as damages to Four-G for breach of contract by Ruta the sum of rents which had accumulated between the date fixed for closing by these parties and that on which the option to *57 Del-Ed was exercised. In his memorandum opinion which was filed on September 29, 1958 Judge Grimshaw said:
"However, since the Supreme Court determined that the defendants were in fault, the plaintiff as equitable owner of the property by virtue of the contract, was entitled to the rents accruing between the time when the contract was to be performed to the date upon which the option in the Del-Ed lease was exercised." Seymour v. Laverty, 94 N.J. Eq. 430 (E. & A. 1922).
While it is true that the Supreme Court was critical of Ruta's peremptory termination of the closing conference, this is not to say that such criticism was a finding of "fault" in the sense that such action constituted an arbitrary or unwarranted refusal to convey to Four-G. The fact is that the Supreme Court sustained the position of Ruta with respect to two of the three items which were in dispute.
The general rule is well settled that where the contract is not completed until after the time stipulated for that purpose, but the court nevertheless decrees a specific performance, it will adjust the equities of the parties by placing them as far as possible in the same position which they would have occupied had the agreement been completed on the prescribed day, and to that end it will allow to the purchaser the rents and profits and to the vendor interest upon the purchase price from that date. Pomeroy, Specific Performance of Contracts (3rd ed. 1926), § 429.
In § 427 of the same work, the writer states the reasoning which underlies the formulation of the rule thus:
"If when the time for completion arrives the purchaser is ready and willing to make his payment, but the vendor is unable to perform on his part because he has not yet perfected his title, and the completion is therefore postponed, it is highly just and equitable that the rents and profits accruing after that day, and up to the subsequent day, when the contract is carried into effect, should be allowed to the vendee in the settlement as an abatement from his purchase price, or should be paid over to him; and, sometimes, when the vendor has been much in fault it would be just that he should pay the vendee a sum as occupation rent for the premises, since from the day named for the completion, the vendee ought to have been in possession and in receipt of the rents and profits. On the other *58 hand, if at the day for completion the vendor is ready, but the vendee fails in his payment, and only succeeds in making his payment at a subsequent time, it is manifestly just that he should be forced to add interest on the price for the period of his delay."
But the exception to the rule embraces the situation where, as here, the purchaser turns to the court for adjudication of the amount actually due without tender of the full purchase price provided in the agreement or the payment of the same into court. In such cases the right to specific performance runs from the adjudication of the amount due.
The case of Jersey City v. Flynn, 74 N.J. Eq. 104 (Ch. 1908), modified on other grounds, Mayor, etc., of Jersey City v. Jersey City Water Supply Co., 76 N.J. Eq. 607 (E. & A. 1910), contains an excellent discussion of the distinction, and by analogy bears a strong factual resemblance to the case at bar. Jersey City contracted with Flynn for the construction of a water works for the city. Flynn was to construct it at his expense and, when it was functioning, Jersey City agreed to take and use the water and pay for it according to scheduled prices. Jersey City was then to have an opportunity to inspect the system to insure that only pure and wholesome water came from the supply. The voters of Jersey City voted to purchase the water works before it had been completed in accordance with said contract. Thereafter, the mayor and aldermen brought action to have defendants convey to the city the water works constructed by defendants, or so much of them as they were able to convey, upon payment by the city of such amount of the consideration as might be ascertained to be due. Defendants claimed that Jersey City was required to pay contract price for the water it received down and through the date of decree. On the other hand, Jersey City claimed that an equitable conversion had taken place and that it was liable only for interest on the purchase price. In sustaining the position taken by the defendant, the court said:
"* * * in the absence of stipulation to the contrary the time fixed for the completion of the contract is the time from which the *59 purchaser is entitled to the rents and liable for the payment of interest. But this rule has its exceptions, and the principle of one of them is, I think, applicable to the case in hand. It is this: Where the bill is filed by the vendor and his title is first made out (that is, shown to be good) in the master's office, the day when the title is made out is the day from which the purchase money begins to bear interest. The case is one, of course, where, under the English system of conveyancing, the vendor is in fault for not having produced a good title prior to or at a time set for performance, and the vendee has refused to perform on that ground. * * *
The case in hand is much more complicated than that just cited. The complainant's failure to perform consists in not having tendered so much of the price as was really payable. Its excuse is that it did not know how much to tender. But it has not only neglected to pay the price; it has advanced several claims that it has not made good by proof-claims, therefore, that the defendant was not bound to submit to. On the other hand, the defendant has insisted that it was entitled to the full purchase price. It has never indicated that it would take less. But the court finds that it was entitled to considerably less. The exact sum payable has, therefore, remained a matter of doubt until decree. * * *"
It is our conclusion that as a matter of law the right of the plaintiff to specific performance came into being with the Supreme Court determination, and we see nothing in the language of the decision which would indicate that contrary effect was intended. Plainly, the court in fixing the terms entitling the plaintiff to specific performance, namely, the payment of the "agreed cash, less the credit for the $900 deposit under the lease, and the delivery of the agreed bond and mortgage," gave prospective operation to its order.
The purport of the Four-G argument on the remand in support of its demand for specific performance was that the title acquired by King Cone and Reiter was taken subject to the then existing dispute between Four-G and Ruta and so was defeated by the resolution of the same in favor of Four-G. It is repeated here on the premises: (1) that the Del-Ed option was not exercised in accordance with its terms; (2) that this departure constituted a "new contract" between Del-Ed and Ruta; and (3) that such contract having been executed subsequent to the filing of the lis *60 pendens thereby took a secondary position to the rights of Four-G under its option. Parenthetically, it should be observed that Four-G expressly disavowed that the transaction between Ruta. Del-Ed, King Cone and Reiter was tainted by fraud. The contentions projected are subject to criticism in various respects. In the first place the hypothesis upon which they are grounded is derived entirely from the proof offered by the title searcher to which we have already alluded. It is urged by Four-G that the fact that the deed bore revenue stamps in the amount of $15.40 and was given subject to a mortgage of $7,500 conclusively established that the total consideration involved in the Ruta, Del-Ed, King Cone and Reiter transaction was $21,500, the same being $1,000 less than the sum provided in the Del-Ed option. We conceive this method of proving the terms of a contract by inference in the absence of the parties thereto to be novel, to say the least. Moreover, it is debatable that Four-G has standing sufficient to enable it to raise the question of whether a change in the terms of the option (if indeed there was one) effected the creation of a new contract. The authorities cited in support of this proposition are inapposite in the respect that in all of these cases: McDowell v. Hemming Mfg. Co., 91 N.J. Law 209 (E. & A. 1917); Rosenberg v. D. Kaltman & Co., 28 N.J. Super. 459 (Ch. 1953); Winans v. Asbury Park National Bank & Trust Co., 13 N.J. Super. 577 (Ch. 1951); the claim of new contract was made by a party to the agreement which was said to have been superseded. But the climactic fallacy in the Four-G thesis lies in a misapprehension of the scope and the effect of N.J.S. 2A:15-7 which provides:
"From and after the filing of a notice of lis pendens, any person claiming title to, interest in or lien upon the real estate described in the notice through any defendant in the action as to which the notice is filed shall be deemed to have acquired the same with knowledge of the pendency of the action, and shall be bound by any judgment entered therein as though he had been made a party thereto and duly served with process therein."
*61 It is well settled that the filing of a lis pendens is constructive notice only as against persons acquiring title or an interest in the property in litigation after the suit has commenced. A person whose interest existed at the commencement of the suit will not be bound by the proceedings unless he be made a party to the suit. Straus v. Loudenslager, 96 N.J. Eq. 678 (E. & A. 1924); Slack v. John, 63 N.J. Eq. 126 (Ch. 1902); Haughwout and Pomeroy v. Murphy, 22 N.J. Eq. 531, 546 (E. & A. 1871). If Del-Ed or its assignees had acquired this property pursuant to an agreement which originated at a time subsequent to filing of the lis pendens and had been made parties to the action, the judgment might have had the effect contended for, this of course depending upon the sufficiency of the defense interposed. Cf. Schwarz v. Munson, 94 N.J. Eq. 754 (E. & A. 1923). But such is not the case. Here, acting in good faith (and this is not questioned), they exercised an option which on the face of the record had priority over that held by Four-G. The issue of whether there was a new contract and, if so, the effect of the same upon the respective options of Del-Ed and Four-G was not before the Supreme Court, hence not decided. To hold that Del-Ed and its assignees are in these circumstances foreclosed by a judgment in an action to which they were strangers would be to deprive them of property rights in violation of due process requirements. We know of no case which suggests that a statute be construed to achieve such a result.
The importance of the joinder of Del-Ed, King Cone and Reiter was drawn sharply to the attention of counsel for Four-G by the trial court in the course of colloquy, and the record reveals that counsel himself admitted that no judgment could be entered against them without "some additional undertaking" on his part. The obvious "undertaking" was to bring in all parties whose property rights might be adversely affected by adjudication of the issues raised by the theory which counsel advanced. No application to do so was made.
*62 Lastly, we observe that because the intervening conveyance of the property under the prior option to Del-Ed placed the subject matter of the contract between Ruta and Four-G beyond the reach of either, the defense of impossibility of performance amply protected Ruta from a claim of breach when compliance with the Supreme Court mandate was demanded. Thus, there was no basis for the awarding of damages.
The denial of specific performance is affirmed; the judgment for damages is reversed. The case is remanded for the entry of a judgment in accordance with this opinion. No costs.