659 A.2d 300

Shirley DeSHIELDS et al.

v.

Tommy BROADWATER, Jr.

JACK'S LIQUORS, INC.

v.

Phunlop SRIUTHAI et ux.

No. 34 Sept. Term, 1994.

Court of Appeals of Maryland.

June 8, 1995.

424

426

George Harper, Upper Marlboro, for appellants.

Carlton M. Green, College Park, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

BELL, Judge.

■ This is a case of first impression with respect to the application of the related doctrines of *lis pendens* and equitable conversion. Specifically, the issue this case presents is whether, prior to the initiation of litigation respecting its ownership, the execution of a contract for the purchase of real property, coupled with a downpayment of less than ten percent of the purchase price, preclude *lis pendens* notice of the subsequent litigation from affecting the contract purchaser's interest—whether, in other words, the interest the purchaser acquires is unaffected by the results of the subsequent litigation. The Circuit Court for Prince George's County ruled in favor of Tommy Broadwater, Jr., the purchaser (the "appellee"), holding that, by virtue of equitable conversion, the purchase occurred before, rather than pending, the litigation. It thus rejected the argument made by Shirley DeShields and Jack's Liquors, Inc., collectively, "the appellants," that *lis pendens* is applicable to subject the appellee's purchase to the decree passed in the litigation initiated by Jack's Liquors. We granted certiorari, on our own motion, while the appellants' appeal was pending in the Court of Special Appeals. We shall affirm the judgment of the circuit court.

I

At the core of this case is the property known as 5361 Sheriff Road, Fairmont Heights, Prince George's County, Maryland, out of which the commercial establishment known as Jack's Liquors, Inc. is operated. Before April 27, 1985, the property was owned by Charles and Marnette Jackson.[1] On

---

1. The deed given to the subsequent purchasers, Phunlop and Chitra Sriuthai, reflected that the sellers were Charles M. Jackson, Marnette A.

that day it was purchased by Phunlop Sriuthai and his wife, Chitra, for $190,000.00. Charles Jackson took back a $165,000 purchase money deed of trust, secured by the property, payable in 30 years.

The property was subsequently sold to the appellee. On January 30, 1989, the appellee entered into a contract of sale with the Sriuthais to purchase the property for $135,000. Although the contract called for settlement within 60 days or earlier, at the option of the appellee, and despite a title search having confirmed the Sriuthais' fee simple title, subject to the deed of trust, settlement was not held until July 12, 1989, due to difficulties encountered in surveying the property. As required by the contract of sale, the appellee paid $10,000 down, which was placed in his attorney's escrow account. At the settlement, pursuant to the contract, the appellee paid the balance due under the deed of trust[2] and received, in return, an executed release of the deed of trust. He also paid the taxes that were due on the premises.[3] No further money was due or payable to the Sriuthais under the contract.

Phunlop Sriuthai had earlier purchased, on March 23, 1984, Jack's Liquors, Inc. from Shirley DeShields.[4] The contract of

---

Jackson, his wife, Charles Clement Newton and Thelma J. Curry. The latter two grantors were the trustees under the deed of trust that Charles M. Jackson took back to secure payment of a portion of the purchase price.

2. The Sriuthais did not appear personally at the settlement. They appeared by Cita Helkie, to whom they had given a power of attorney. The deed of trust pay-out was made directly to Jackson, the holder of the deed of trust.

3. The circuit court states, in its memorandum opinion, that "Mr. Broadwater ... obligated himself to pay back taxes on the property." The contract, however, is silent on the point.

4. The document Phunlop Sriuthai executed was an "Agreement for Sale and Purchase of Fifty Percent (50%) of Corporate Capital Stock and Option." According to the agreement, the sellers were Shirley R. DeShields, Craig R. Lewis, and Velma Marie DeShields. The agreement states that Sriuthai was purchasing fifty-percent (50%) of the corporate capital stock of Jack's Liquors, Inc. DeShields testified, however, that, prior to March 23, 1984, she had acquired all of the

sale stated that the purchase price was $100,000, $40,000 of which was to be paid in cash and the remainder by assuming 36½ percent of the monthly payments on a $134,000 Small Business Administration loan. The contract also provided for an option to purchase the remainder of the capital stock. If exercised, that purchase price would also be $100,000, payable part in cash and part by assuming the balance of the Small Business Administration loan.

A little less than two years later, DeShields sued Sriuthai for breach of contract, breach of fiduciary duties, and conversion. The breach of contract count alleged Sriuthai's failure to pay off the assumed portion of the Small Business Administration loan, while the breach of fiduciary relationship related to his purchase of the subject property "without disclosing to [DeShields] any information regarding the purchase price and its impact on the financial condition and prospects of Jack's Liquors, Inc." The conversion count was premised upon the obligation of Sriuthai to pay DeShields one-half of the profits derived from Jack's Liquors, Inc., an obligation, she alleged, Sriuthai failed to meet. The lawsuit was settled almost three years later, but prior to the appellee's entering into the contract for the purchase of the subject property. The settlement agreement provided, *inter alia*, that DeShields, acting as chief executive officer, would assume control of the corporate affairs of Jack's Liquors, Inc. Another provision of the agreement pertinent to the case *sub judice*, given the trial court's findings, was that Jack's Liquors agreed to pay rent to the Sriuthais for a five year period, with an option to renew.[5]

After the appellee had contracted to purchase the subject property, Jack's Liquors, Inc. filed suit against Phunlop and

shares of Jack's Liquors, Inc., and that she had sold Sriuthai all of her interest in that business. The reason for structuring the transaction in this manner, she said, was because Sriuthai was a foreign national who could not have a liquor license in his name alone.

5. Jack's Liquors, Inc. was not a party to either the lawsuit or the settlement agreement. The validity of the agreement as to Jack's Liquors, Inc., or its enforceability as to it, is not, however, at issue in this case.

Chitra Sriuthai, asking the court to establish a constructive trust on the subject property and award it damages. This was done on March 28, 1989. The suit alleged that the Sriuthais "conspired to use Corporate funds to acquire for their own use a Corporate opportunity to acquire ownership of the premises." The appellee, who was not joined as a defendant in that action, later moved to intervene.

Default judgment was entered against the Sriuthais on January 28, 1991. On April 17, while the appellee's motion to intervene, filed on March 21, 1991, was pending, the court entered judgment against the Sriuthais for $124,000 and appointed the appellants' attorney trustee to convey, by quit claim deed, their interest in the subject property, an *ex parte* hearing having previously been held on April 3, 1991. That judgment was partially vacated as to Phunlop Sriuthai, on motion of the appellants, based upon defective service of process, on November 8, 1991, the same date on which the appellee's motion to intervene was denied. In the meantime, having unsuccessfully attempted to negotiate a lease arrangement for Jack's Liquors, Inc., with DeShields, the appellee filed a complaint for possession of real property against the appellants. In that complaint, he sought an order requiring the appellants to quit and surrender the premises and damages for the fair rental value of the premises since July 12, 1989. On the appellee's motion, this action was consolidated with Jack's Liquors, Inc.'s constructive trust action against the Sriuthais.

The trial court found as a fact that when he contracted to purchase the premises, the appellee did not know that Jack's Liquors contemplated suing the Sriuthais, or that it claimed any interest or title in the subject property. Consequently, the court concluded that the appellee was a *bona fide* purchaser for value of the subject property. In support of that conclusion, it noted, in addition to the February, 1989 title search, that sometime in January, 1989, but prior to the date of the contract of sale, DeShields showed the appellee a copy of the settlement agreement between Sriuthai and DeShields. It will be recalled that that agreement contained provisions

requiring Jack's Liquors to pay the Sriuthias' rent, thus seeming to recognize them as landlord of such property. Moreover, the court found that Sriuthai informed the appellee that DeShields did not want to purchase the property. Furthermore, the court was satisfied that

[d]uring the period between January 30, 1989 and July 12, 1989, Mr. Broadwater had several conversations with Ms. DeShields. The first conversation was on January 30, 1989 when Mr. Broadwater told Ms. DeShields that he had purchased the property. Ms. DeShields appeared happy about the purchase and assured Mr. Broadwater that 'we'll be friends.' Within two weeks of the purchase, Ms. DeShields again reassured Mr. Broadwater by saying words to this effect: 'You'll be my landlord and we'll get along well.'

The circuit court also found as a fact that the appellee did not learn of the litigation between Jack's Liquors and the Sriuthais until after July 12, 1989. It was convinced by a preponderance of the evidence that DeShields informed appellee of the suit within a week after the settlement on the property. The court similarly concluded that no agent of the appellee had any knowledge of the suit prior to July 12, 1989.

The court held that the appellee, through equitable conversion, acquired his interest in the subject property prior to the initiation of the litigation relating to it. Consequently, the court concluded that *lis pendens* had no applicability to the appellee's purchase.

## II

The doctrine of *lis pendens* is well-established in Maryland.[6] *See Corey v. Carback*, 201 Md. 389, 403–04, 94

---

**6.** *Lis pendens* is the subject of the BD Rules. Effective January 1, 1962, the rules address the creation of *lis pendens*, Rule BD 1, how to effect constructive notice when the litigation affecting the subject property is pending in a county other than the county in which the property is situated, Rule BD 2, the termination of *lis pendens*, Rule BD 3, and the costs of *lis pendens* proceedings. Rule BD 4. It has been suggested that implicit in these Rules is the recognition that, as applied in

A.2d 629, 638 (1953); *Hall v. Jack,* 32 Md. 253, 263–64 (1870); *Applegarth v. Russell,* 25 Md. 317, 320 (1866); *Inloes' Lessee v. Harvey,* 11 Md. 519, 524–25 (1857); *Feigley v. Feigley,* 7 Md. 537, 563 (1855); *Warfel v. Brady,* 95 Md.App. 1, 7, 619 A.2d 171, 174, *cert. denied,* 331 Md. 88, 626 A.2d 371, *cert. denied,* —— U.S. ——, 114 S.Ct. 470, 126 L.Ed.2d 422 (1993); *Permanent Financial Corp. v. Taro,* 71 Md.App. 489, 492, 526 A.2d 611, 612, *cert. granted,* 311 Md. 193, 533 A.2d 670 (1987) appeal dismissed, January 26, 1988; *Angelos v. Maryland Casualty Company,* 38 Md.App. 265, 268, 380 A.2d 646, 648 (1977). It literally means a pending lawsuit, referring to the jurisdiction, power, or control which a court acquires over property involved in a lawsuit pending its continuance and final judgment. *Warfel,* 95 Md.App. at 7, 619 A.2d at 174; *Angelos,* 38 Md.App. at 268, 380 A.2d at 648; Black's Law Dictionary 840 (5th Ed.1979). Under the doctrine, an interest in property acquired while litigation affecting title to that property is pending is taken subject to the results of that pending litigation. *Applegarth,* 25 Md. at 320; *Inloes' Lessee,* 11 Md. at 524–25; *Angelos,* 38 Md.App. at 268, 380 A.2d at 648; *Creative Development Corp. v. Bond,* 34 Md.App. 279, 284, 367 A.2d 566, 569 (1976). Thus, "[u]nder the common-law doctrine of lis pendens, if property was the subject of litigation, the defendant-owner could transfer all or part of his or her interest in the property during the course of litigation, but not to the detriment of the rights of the plaintiff." Janice Gregg Levy, Comment, *Lis Pendens and Procedural Due Process: A Closer Look After Connecticut v. Doehr,* 51 Md. L.Rev. 1054, 1056 (1992). This Court stated the same proposition thusly, in *Inloes' Lessee,* 11 Md. at 524 (quoting I Story Eq.Jur. §§ 405, 406):

"A purchase made of property actually in litigation, pendente lite, for a valuable consideration, and without any express

---

Maryland, *lis pendens* only operates against Maryland real or leasehold property, which is the subject of Maryland litigation. *Permanent Financial Corp. v. Taro,* 71 Md.App. 489, 495, 526 A.2d 611, 613–614, *cert. granted,* 311 Md. 193, 533 A.2d 670 (1987), appeal dismissed, January 26, 1988.

or implied notice in point of fact, affects the purchaser in the same manner as if he had such notice; and he will accordingly be bound by the judgment or decree in the suit.... Ordinarily, it is true, that the decree of a court binds only the parties and their privies in representation or estate. But he who purchases during the pendency of a suit, is held bound by the decree that may be made against the person from whom he derives title. The litigating parties are exempted from taking notice of the title so acquired; and such purchaser need not be made a party to the suit."

*See Taro,* 71 Md.App. at 492, 526 A.2d at 612.

■ The doctrine " 'is founded upon a great public policy,' to prevent alienation during the progress of the suit and to prevent endless litigation." *Applegarth,* 25 Md. at 323 (quoting Story's Eq.Jur. § 406). *See also Inloes' Lessee,* 11 Md. at 524–25 (quoting Story's Eq.Jur. § 406), in which we said:

"Where there is a real and fair purchase without any notice, the rule may operate very hardly. But it is a rule founded upon a great public policy, for, otherwise, alienation made during a suit might defeat its whole purpose; and there would be no end to litigation. And hence arises the maxim, *pendente lite nihil innovetur*[7]; the effect of which is, not to annul the conveyance, but only to render it subservient to the rights of the parties in litigation. As to the rights of these parties, the conveyance is treated as if it never had any existence; and it does not vary them."

A cogent and concise discussion of the public policy underlying *lis pendens* is also contained in Levy, 51 Md.L.Rev. at 1057–58:

The reasons underlying the lis pendens doctrine are grounded in public policy and are self-evident: if a defendant could convey his interest in property to a bona fide purchaser during the course of litigation concerning the title of the

---

7. Black's Law Dictionary 1020 (5th Ed., 1979), defines *pendente lite nihil innovetur* as, "[d]uring a litigation nothing new should be introduced."

property, a court would be limited in its ability to provide a meaningful remedy to a successful plaintiff. If the remedy granted is a money judgment, the plaintiff could obtain and execute liens on other property held by the defendant, but this would be of little use if the defendant had insufficient or no other property. More often, in fact, the remedy granted is title to or interest in the property itself; thus, the availability of the property is usually critical to a plaintiff's relief. The doctrine therefore ensures that judicial decisions will be given full effect, and that there will be an end to litigation.

*Lis pendens* has no applicability, therefore, except to proceedings directly relating to the title to the property transferred or in which the ultimate interest and object is to subject the property in question to the disposal of a decree of the court. *Feigley,* 7 Md. at 563; *see also Applegarth,* 25 Md. at 320–21.

■ A "*lis pendens* is a general notice of an equity to all the world," not notice of an actual lien. *Applegarth,* 25 Md. at 323 (quoting Story's Eq.Jur. § 406). Consequently *lis pendens* proceedings do not technically prevent alienation; they place a cloud on title to the property and "[create] a priority in favor of the plaintiff, which, if the plaintiff succeeds on the merits of the claim, relates back to the date of the filing of the complaint . . . [and, thus, preserve] for a successful plaintiff the opportunity to have a lien relating back to the date of the filing of the complaint." Levy, Comment, 51 Md.L.Rev. at 1057.

■ This is so because "the law does not allow litigant parties to give to others, pending the litigation, rights to the property in dispute, so as to prejudice the opposite party." *Creative Development Corp.,* 34 Md.App. at 284, 367 A.2d at 569 (quoting 2 J. Pomeroy, *A Treatise on Equity Jurisprudence* § 632 (5th ed. S. Symons 1941)).[8] Unless the transfer

---

**8.** The full title of Pomeroy's work is: *A Treatise on Equity Jurisprudence as Administered in the United States of America Adapted for all the States and to the Union of Legal and Equitable Remedies under the Reformed Procedure.*

of the property occurs after the suit which provides *lis pendens* notice is filed, the doctrine does not apply. *See, e.g., Hall,* 32 Md. at 263–64.

Because *lis pendens* is triggered by the initiation of litigation affecting the title to real property, ordinarily whether the plaintiff in that litigation has knowledge of the transfer of the property is not an issue. Thus, when, after the complaint has been filed, the defendant transfers his or her interest in the property which is the subject of the lawsuit, *lis pendens* applies to subject that property to the result of the pending litigation whether or not the plaintiff is aware of the transfer. In other words, even if the plaintiff is aware of the transfer, the plaintiff need not join the transferee as a party to his or her suit. On the other hand, a transferee's knowledge of the pendency of litigation affecting the property acquired may very well be quite important. Because *lis pendens* provides constructive notice of the equity claimed by the plaintiff, the transferee's actual notice of that equitable claim prevents that transferee from being a purchaser in good faith. Indeed, it has been said that one who purchases with notice of another's equity is a *mala fide* purchaser. *See Newport Terminals, Inc. v. Sunset Terminals, Inc.,* 279 Or. 93, 566 P.2d 1181, 1185 (1977); *Seguin v. Maloney,* 198 Or. 272, 253 P.2d 252, 258 (1953); *Ford v. Hofer,* 79 S.D. 257, 111 N.W.2d 214, 218 (1961); *Harkness v. McQueen,* 232 S.W.2d 629, 635 (Tex.1950); *Mitchell v. Peters,* 18 Iowa 119, 121 (1864). As we have seen, where the defendant's interest in the property is transferred prior to the initiation of the action affecting title to that property, *lis pendens* does not apply. In that event, the usual rule—that the decree of the court binds only those parties before it and their privies—applies. Thus, where it is uncertain as to whether the transfer occurred prior to or after the suit was initiated, the only way to ensure that the results of the litigation will be applicable to the property which is its subject is to join the contract purchaser as a party to the case. In that situation, the plaintiff's knowledge of the transfer is quite relevant.

### III

■ The doctrine of equitable conversion and, more particularly, by contract, is also well-established in Maryland. We recently observed that "[e]quitable conversion ... is a theoretical change of property from realty to personalty, or *vice versa*, in order that the intention of the parties, in the case of a contract of sale, or the directions of the testator, in the case of directions in a will, may be given effect." *Coe v. Hays*, 328 Md. 350, 358, 614 A.2d 576, 580 (1992) (citing *Harrison v. Prentice*, 183 Md. 474, 479, 38 A.2d 101, 104–05 (1944), *and* Roger A. Cunningham et al., *The Law of Property* § 10.13, at 698–705 (1984)). In *Himmighoefer v. Medallion Industries, Inc.*, 302 Md. 270, 278, 487 A.2d 282, 286 (1985), this Court explained equitable conversion by contract, thusly:

> The legal cliche, that equity treats that as being done which should be done, is the basis of the theory of equitable conversion. Hence, when the vendee contracts to buy and the vendor to sell, though legal title has not yet passed, in equity the vendee becomes the owner of the land, the vendor of the purchase money. In equity the vendee has a real interest and the vendor a personal interest. Equity treats the executory contract as a conversion, whereby an equitable interest in the land is secured to the purchaser for whom the vendor holds the legal title in trust. This is the doctrine of equitable conversion. (Citations omitted.)

(Quoting 8A Thompson, *Real Property*, § 4447 at 273–74 (Grimes Repl.Vol. 1963).) We elaborated on the doctrine's effect in *Watson v. Watson*, 304 Md. 48, 60, 497 A.2d 794, 800 (1985):

> One result of the doctrine is that a judgment entered against the vendor after the contract has been made does not become a lien on the realty. A vendor's judgment creditor may not execute on the realty because the vendor, sometimes described as trustee for the purchaser, has a right to the balance of the purchase money but has no beneficial interest in the property. Equitable title is superior to a later judgment lien.

With regard to the latter point, we observed in *Himmighoefer*:

It is a general rule that the holder of an equitable title or . interest in property, by virtue of an unrecorded contract of sale, has a claim superior to that of a creditor obtaining judgment subsequent to the execution of the contract. For the purposes of this rule it appears to be quite immaterial whether the credit was extended prior or subsequent to the execution of the contract. 'The effect of such a contract is to vest the equitable ownership of the property in the vendee, subject to the vendor's lien for unpaid purchase · money, and to leave only the legal title in the vendor pending the fulfillment of the contract and the formal conveyance of the estate. The right of the vendee to have the title conveyed upon full compliance with the contract of purchase is not impaired by the fact that the vendor, subsequently to the execution of the contract, incurred a debt upon which judgment was recovered. A judgment creditor "stands in the place of his debtor, and he can only take the property of his debtor subject to the equitable charges to which it is liable in the hands of the debtor at the time of the rendition of the judgment." '

302 Md. at 279, 487 A.2d at 287 (citations omitted) (quoting *Stebbins–Anderson Company v. Bolton,* 208 Md. 183, 187, 117 A.2d 908, 910 (1955)). *See also William Skinner & Sons' Ship–Building & Dry Dock Co. v. Houghton,* 92 Md. 68, 86, 48 A. 85, 87 (1900); *Valentine v. Seiss,* 79 Md. 187, 190, 28 A. 892, 893 (1894); *Hampson v. Edelen* 2 H. & J. 64, 66 (Md.1806). In addition to the intention of the parties, the determination whether real property, the subject of a contract of sale, is realty or personalty depends upon whether the contract was " 'valid and binding, free from inequitable imperfections, and such as a court of equity will specifically enforce against an unwilling purchaser.' " *Birckner v. Tilch,* 179 Md. 314, 323, 18 A.2d 222, 226, *cert. denied,* 314 U.S. 635, 62 S.Ct. 68, 86 L.Ed. 509 (1941) (quoting *Pomeroy's Equity Jurisprudence,* § 1161, at 2753 (4th ed. 1918)). *See also Watson,* 304 Md. at 61, 497 A.2d at 800; *Hampson,* 2 H & J at 66. "Ordinarily, the

conversion occurs when the contract is executed, assuming that the contract of sale is *'bona fide* made for a valuable consideration,' and, at that time, is specifically enforceable." *Coe v. Hays,* 328 Md. at 358, 614 A.2d at 580 (quoting *Hampson,* 2 H & J at 66) (citation omitted).

## IV

Appellee entered into an executory contract with the Sriuthais for the purchase of the subject property on January 30, 1989, almost two months before Jack's Liquors filed its constructive trust suit against the Sriuthias. If that act constitutes the "purchase" of the property, then, because it preceded the suit, *lis pendens* does not apply, notwithstanding that settlement was held more than three months after suit was filed. The critical question, therefore, is what was the effect of the executory contract.[9] Moreover, the court specifically found, as a fact, that the appellee did not know about the constructive trust action until after he had gone to settlement. Indeed, it found that the appellee and DeShields had conversations both before and after the executory contract was signed which gave no indication that there was any claim to equity in the property by DeShields, or, through DeShields as its chief executive officer, by Jack's Liquors.

We find the answer in the doctrine of equitable conversion. When, in a *bona fide* transaction for a valuable consideration, the appellee contracted with the Sriuthais to purchase and the Sriuthais contracted to sell the subject property, the appellee became the equitable owner of the real property. *Himmighoefer,* 302 Md. at 278, 487 A.2d at 286; *Hampson,* 2 H & J at 66. The trial court found that the

---

9. An executory contract is

 [a] contract that has not as yet been fully completed or performed. A contract the obligation (performance) of which relates to the future. Black's Law Dictionary 512 (5th Ed.1979). *See, e.g., York Roofing v. Adcock,* 333 Md. 158, 634 A.2d 39 (1993); *Coe v. Hays,* 328 Md. 350, 614 A.2d 576 (1992); *Beard v. S/E Joint Venture,* 322 Md. 225, 587 A.2d 239 (1991); *Himmighoefer v. Medallion Indus., Inc.,* 302 Md. 270, 487 A.2d 282 (1985).

appellee was unaware that Jack's Liquors intended to sue the Sriuthais, or that it claimed an interest or title in the subject property. Further, the record does not reflect, and the appellants do not so contend, that at the time the contract was executed, the purchase could not be specifically enforced. Indeed, the only problem the record reflects is that the appellee's attorney had some difficulty acquiring an accurate survey of the property. On January 30, 1989, therefore, the appellee acquired equitable ownership of the real property. From the time of the execution of the contract, the Sriuthais no longer had a beneficial interest in the property; they had merely a bare legal title, which they held as trustee for the appellee. *See Watson,* 304 Md. at 60, 497 A.2d at 800. The appellee acquired legal title when, at settlement, he paid the balance of the purchase price, $10,000 already having been paid down. We need not decide to whom the balance of the purchase price might be due because, in this case, the contract required that the balance due from the appellee buyer be used to pay off the existing deed of trust and taxes due.

 The appellants do not dispute that *lis pendens* is applicable only when a property interest is transferred pendente lite. What the appellants do dispute, however, is the meaning of the term "purchase." Relying on this Court's decision in two cases, both decided more than a century ago, they argue that, for purposes of *lis pendens,* purchase means "conveyance" or refers to "one who comes into possession." *See Inloes' Lessee,* 11 Md. at 524–25; *Campbell's Case,* 2 Bland 209, 210 (Md.1825). Since the subject property was not "conveyed" to the appellee until the July 12, 1989 settlement date, when legal title passed, and the appellee did not "come into possession" of the property until that time, the appellants contend that *lis pendens* applies. Accordingly, they say, the trial court's ruling that "purchase" is to be equated with the signing of the executory contract amounts essentially to a redefinition of *lis pendens.*

We are not persuaded. To define "purchase," in the context of *lis pendens,* so narrowly is to forever preclude the applica-

bility of equitable conversion in that context. No argument to that effect was made in either case on which the appellants rely. Indeed, in each, the court's discussion was dictated by the facts of that particular case. We are not prepared, on such a meager basis as has been offered by the appellants, to hold that one well-settled doctrine may exist to the exclusion of another equally well-established doctrine. To justify such a result, there must ·appear to be some basis, other than the factual underpinnings of a case in which the issue has never been raised, to support it.

 The appellants are correct when they assert that none of the cases upon which the trial court relied in addressing equitable conversion involved *lis pendens*. So too is their observation that *"[l]is pendens* has nothing to do with judgment creditors," the typical one of whom "files an action *ex contractu* and acquires a lien upon land held by the debtor only after judgment is entered." In that situation, we agree with the appellants that one who purchases land prior to suit being filed, but settles on the property only afterwards, *albeit* before judgment is entered, is not bound by the judgment. We do not agree, however, that *lis pendens* gives litigants, whose action affects title to the land, priority over such purchasers. Just as an *ex contractu* action does not place a lien on property until after it has been tried and, hence, does not bind a purchaser of the property during the pendency of that action, neither does an action affecting title to the land place a lien on the land. Rather, the filing of the action attributes to one who purchases an interest in the land notice of the pendency of the action so that that purchaser takes subject to the results of the litigation. In other words, an action affecting title to the property is notice of an equity or expectancy on the part of the plaintiff in the land. Where a specifically enforceable equity in that same land has been acquired, *bona fide* and for a valuable consideration, prior to the filing of the action, the plaintiff's action does not acquire priority. Indeed, when there are competing equities, one of which was acquired prelitigation, it is the pre-existing equity that prevails. *See Himmighoefer,* 302 Md. at 281, 487 A.2d at

287–88. In that case, the equitable interest obtained by contract purchasers from the builder of a subdivision were held to be superior to mechanics liens judicially entered after the contracts of sale were made but before deeds to the purchasers were executed, acknowledged, and recorded. It was clear in that case that the executory contract preceded the filing of the mechanics lien action. The doctrine of *lis pendens* was not raised, presumably for that reason.

Moreover, in this case, the trial court determined that DeShields, the chief executive officer of Jack's Liquors, was aware, prior to filing suit against the Sriuthais, that the appellee had contracted to purchase the subject premises, although he had not yet gone to settlement. With that knowledge, Jack's Liquors could have, and indeed, should have joined the appellee as a party in its constructive trust suit. Not having been joined, the appellee is not bound by the judgment rendered in that action. The trial court correctly so held.

V

Although we have not previously considered the effect of equitable conversion on the doctrine of *lis pendens*, courts in other jurisdictions have. The majority of those courts, hold, as we have done, that *lis pendens* filed after the execution of the sales contract does not affect the interest of the contract purchaser. *E.g., Patton v. Darden*, 227 Ala. 129, 148 So. 806, 808 (1933); *Rooney v. Michael*, 84 Ala. 585, 4 So. 421, 423 (1888); *Lee v. Silva*, 197 Cal. 364, 240 P. 1015, 1018 (1925); *Marshall v. Charland*, 106 Ga. 42, 31 S.E. 791, 791 (1898); *Bowen v. Jameson*, 223 Ky. 493, 4 S.W.2d 401, 403 (1928); *Parks v. Smoot's Adm'rs*, 105 Ky. 63, 48 S.W. 146, 147 (1898); *Roberts v. Friedell*, 218 Minn. 88, 15 N.W.2d 496, 499 (1944); *Tinnon v. Tanksley*, 408 S.W.2d 98, 103 (Mo.1966); *Four–G Corporation v. Ruta*, 56 N.J.Super. 52, 151 A.2d 546, 551 (1959); *Star v. Norsteby*, 75 N.D. 563, 30 N.W.2d 718, 720 (1948); *Young's Administrator v. McClung*, 50 Va. 336, 9 Gratt. 336, 354 (1852); *West Va. Pulp & Paper Co. v. Cooper,*

87 W.Va. 781, 106 S.E. 55, 59 (1921); *Perszyk v. Milwaukee Electric Railway & Light Company,* 215 Wis. 233, 254 N.W. 753, 755–56 (1934); *see Parks v. Jackson* 11 Wend. 442 (N.Y.1833). *See* 8 Thompson, *Real Property* § 4308, at 340 (Grimes Repl.Vol., 1963) ("Under the weight of authority a lis pendens filed after the execution of the sales contract does not affect the purchaser."); Annotation, *Lis Pendens–Antecedent Purchaser,* 93 A.L.R. 404, 404–08 (1934).[10] *See also Gordy v. Morton,* 624 S.W.2d 705, 707 (Tex.1981) (*lis pendens* was inapplicable to mortgagee, which purchased subject property at foreclosure sale some eight months before *lis pendens* notice was filed). Of course, "when the contract ... is not purely executory and in no way binds the optionee to complete the purchase, the contract does not vest in him any interest in the land, and ... the land is attachable as the land of the vendor." *Cooper,* 106 S.E. at 59. *See also Lightle v. Schmidt,* 144 Ark. 304, 222 S.W. 46, 46–47 (1920) (to be unaffected by the rule of *lis pendens,* the executory contract of sale must be binding and enforceable in equity); *Rooney v. Michael,* 4 So. at 423 (pre-existing contract must be valid and enforceable).[11]

*Tanksley* articulates the majority view:

The fact that a lis pendens was filed on November 14, 1964 does not change the situation. The notice of suit under

---

**10.** The full title of the A.L.R. annotation is "Doctrine of lis pendens as applied against one who takes deed pending action pursuant to executory contract entered into before action commenced."

**11.** In *Mitchell v. Peters,* 18 Iowa 119, 121 (1864), the court observed, "A *lis pendens* only operates as constructive notice to all persons of the title or claim of the parties to the subject of litigation. If actual notice to a purchaser is otherwise given, it is immaterial whether or not there is a *lis pendens* as to him." The court pointed out that a person purchasing an estate after notice of a prior equitable right is a *mala fide* purchaser who cannot defeat the prior equitable interest by obtaining legal title. *Id.* at 121–22. *See Jennings v. Kiernan,* 35 Or. 349, 55 P. 443, 445–47 (1898), *reh'g denied,* 35 Or. 349, 56 P. 72 (1899), (*lis pendens* inapplicable, notwithstanding purchaser's knowledge of the suit, where purchaser under a written agreement paid for patented land before the government instituted suit to cancel the patent, received, but did not record, his deed while the suit was pending, and the government made no showing that it had no notice of the purchaser's equitable interest).

§ 527.260 is constructive notice to purchasers 'only from the time of filing the notice. It would not be constructive notice to a purchaser who acquired his right before the notice was filed.' In *Abington [v. O'Dell,* 197 S.W. 339 (Mo.1917) ], the party in question bought the land in 1905, paid $20 down and gave notes for $15 each, payable monthly, receiving a title bond at the time of purchase. The suit in question was filed in 1906, proceeded to judgment in 1908 and the purchaser received his deed in 1909. The notice of lis pendens was filed after he contracted for the land and before he finished his payments. The court held that the lis pendens did not affect him because '[h]e had a contract which gave him a right to the property.' *Abington v. O'Dell* is cited among others from various jurisdictions in 93 A.L.R. 404 in support of the statement that the purchaser is in no wise affected with notice of a suit where there is an executory contract for the purchase of land entered into prior to the bringing of a suit involving the title, without making the purchaser a party thereto. The Dearmont Olivers are not purchasers pendente lite as was the purchaser in *Adrian v. Republic Finance Corporation,* [286 S.W. 95 (Mo.1926) ]. As the owners of a prior executory contract for the purchase of the land they were not affected by the lis pendens filed eight months after the date their contract was executed. The fact that they received their deed after the suit was filed makes no difference under these facts. Although there are some decisions to the contrary 'It is well settled that the filing of a *lis pendens* is constructive notice only as against persons acquiring title or an interest in the property in litigation after the suit has commenced. A person whose interest existed at the commencement of the suit will not be bound by the proceedings unless he be made a party to the suit.'

408 S.W.2d at 103 (citations omitted) (quoting *Abington v. O'Dell,* 197 S.W. at 340 and *Four–G Corporation v. Ruta,* 151 A.2d at 551).

*Meyering v. Russell,* 53 Mich.App. 695, 220 N.W.2d 121, *rev'd on other grounds,* 393 Mich. 770, 224 N.W.2d 280 (1974),

is offered by the appellants as representative of the minority position. After acknowledging the prevailing rule, that the legal title of a purchaser of land obtained pursuant to an executory contract executed prior to the initiation of litigation affecting its title is not affected by *lis pendens*, the court identified exceptions to that rule:

> [W]here the third-party purchaser is (1) made a party to the suit before rendition of judgment, or (2) has knowledge of the adverse claim at the time of signing the executory contract, or (3) has paid only a portion of the purchase price before the lis pendens is filed.

*Id.* 220 N.W.2d at 125 (citing, as to the first proposition, *Tanksley,* 408 S.W.2d at 103 *and,* as to the third, 93 A.L.R. at 408–09.). The court recognized that "[o]f the exceptions, the most important is the requisite that the third-party purchaser has no knowledge of the adverse claim." *Id.*

In addition to not having paid the full purchase price when the suit was filed, in *Meyering,* the third party purchaser was aware, when he purchased the property, of the plaintiff's claim and was joined in the suit as a party defendant by the plaintiff. The situation in that case, consequently, in no way was similar to that in the case *sub judice.* Indeed, it may well be that the court's *lis pendens* discussion was unnecessary and, therefore, dicta.[12]

In truth, neither the first nor the second requisite identified by *Meyering* is in actuality an exception. Joining a third-party purchaser of an interest in property as a party to the suit affecting the title to that property is simply recognition that the plaintiff does not rely on *lis pendens.* One who purchases an interest in property, aware of the soon to be plaintiff's claimed equity in it, in equity, simply is not entitled to protection from *lis pendens. See George v. Oakhurst*

---

12. The appellants question the trial court's fact finding, urging us to find it to be clearly erroneous. We decline to do so, fully cognizant of the admonition of Maryland Rule 8–131(c) that when a case is tried before the court without a jury, deference is due the trial court's factual findings, given its opportunity to hear and see the witnesses testify.

*Realty, Inc.,* 414 A.2d 471, 473 (R.I.1980) (citations omitted) ("It is well established that an executory purchase-and-sale agreement vests in the vendee thereof equitable title to the land involved . . . and, further, that a third party who purchases such land with notice of the vendee's interest therein under a preexisting executory purchase-and-sale agreement takes title subject to such interest. . . ."); *Peters, supra,* 18 Iowa at 121; 93 A.L.R. at 408–09. With regard to the second requisite, however, which according to *Meyering,* is the most important, in this case, the trial court found as a fact that the appellee had no knowledge of the filing of the action or even of the plaintiff's interest in the property until after he had taken legal title to the property. Some courts have embraced the third exception. *E.g., Fisher v. Shropshire,* 147 U.S. 133, 144, 13 S.Ct. 201, 205, 37 L.Ed. 109, 115 (1893); *Lightle v. Schmidt, supra,* 222 S.W. at 46–47; *Siedschlag v. Griffin,* 132 Wis. 106, 112 N.W. 18, 20–21 (1907). Although *Shropshire* and *Griffin* may be distinguished factually,[13] we reject the rationale of these cases for the same reasons we rejected similar arguments made by the appellants. As we have stated, *supra,* we are not prepared to hold that a well-established principle of Maryland law is viable except when another well-established principle of Maryland law is also involved. Just as the appellants gave no principled basis for refusing to apply equitable conversion when a *lis pendens* factual scenario is presented, these cases provide no reasoned basis for the position they take.

## VI

The appellants' final argument is that collateral estoppel and law of the case precluded the appellee from challeng-

---

**13.** In *Shropshire,* the purchase contract was a verbal one and, thus, may not have been enforceable. In *Griffin,* the third party purchaser failed to record her deed to the property within the time permitted by the registry statute in force, which pursuant to that statute, caused her to be deemed a subsequent purchaser and, therefore, to be bound by the proceedings affecting title to the property. *See Griffin,* 112 N.W. at 20–21.

ing, at trial, the applicability of *lis pendens* and, thus, the trial court erred in permitting him to do so. Their argument is premised upon equating the trial court's November 8, 1991 order, which denied the appellee's motion to intervene, with a ruling that *lis pendens* was applicable to the appellee's purchase of the subject property, and necessarily so. We do not agree.

We note at the outset that the law of the case doctrine does not bind an appellate court on direct review. *Houghton v. County Comm'rs of Kent Co.*, 305 Md. 407, 413–14, 504 A.2d 1145, 1148–49, on reconsideration, 307 Md. 216, 513 A.2d 291 (1986).

The appellee moved to intervene as a matter of right, pursuant to Maryland Rule 2–214(a),[14] claiming an interest in the subject matter of the constructive trust suit and asserting that his interest was not being adequately represented. He alleged that, despite its having knowledge of his interest in the subject property prior to filing suit, rather than him, the plaintiff joined the Sriuthais, as defendants and failed to obtain personal service on them. Furthermore, he asserted, the Sriuthais not having been served and without actual knowledge of the action, failed to plead or defend. The appellants opposed the motion to intervene, arguing that the appellee was not a necessary party to the action. For that proposition, they relied on the doctrine of *lis pendens*. Moreover, the appellants disputed that the plaintiff had knowledge of the appellee's interest in the property prior to July 1989.

---

**14.** Maryland Rule 2–214(a) provides:

(a) **Of Right.**—Upon timely motion, a person shall be permitted to intervene in an action:

(1) when the person has an unconditional right to intervene as a matter of law; or

(2) when the person claims an interest relating to the property or transaction that is the subject of the action, and the person is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest unless it is adequately represented by existing parties.

The record does not reflect upon what basis the trial court denied the motion to intervene.

Even though the appellants raised the issue of *lis pendens* in their opposition to the motion to intervene, it was not necessary that the trial court adopt that argument in order to rule on the motion. Maryland Rule 2–214(a) requires the motion to be filed timely. Despite having learned, in July, 1989, of the pendency of the constructive trust action against the Sriuthais, it was not until March 21, 1991, that the appellee filed a motion to intervene. Conceivably, therefore, the trial court's ruling may have been based on the motion's being untimely.[15] *See Coalition for Open Doors v. Annapolis Lodge No. 622*, 333 Md. 359, 367, 635 A.2d 412, 416 (1994); *Pharmaceia/ENI Diagnostics, Inc. v. Washington Suburban Sanitary Com.*, 85 Md.App. 555, 567, 584 A.2d 714, 720 (1991). It is conceivable, therefore, that the court's ruling was premised on the untimeliness of the motion, rather than on *lis pendens*.

*JUDGMENT AFFIRMED WITH COSTS.*

---

15. There was also some question as to whether, when the motion to intervene was filed, the appellants were timely served. It appears that the motion was filed prior to the damages hearing, but that service on the appellants occurred after that hearing.